IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERKLEY INSURANCE COMPANY<br>475 Steamboat Road<br>Greenwich, CT 06830 | * * | |
| *Plaintiff,* | * | |
| v. | * | Case No.: _____ |
| MARX SHEET METAL &<br>MECHANICAL, INC.<br>373 High Street<br>Wilkes Barre, PA 18702 | *<br>*<br>* | |
| MARX NJ GROUP, LLC<br>14 Easy St., Ste. 14E4<br>Bound Brook, NJ 08805 | *<br>* | |
| Serve on Resident Agent:<br>    Joseph Marx<br>    14 Easy St., Ste. 14E4<br>    Bound Brook, NJ 08805 | *<br>* | |
| JOSEPH MARX<br>24 Clifton Court<br>Hanover Twp., PA 18706 | *<br>* | |
| ANGELA MARX<br>24 Clifton Court<br>Hanover Twp., PA 18706 | *<br>* | |
| THOMAS MARX, SR.<br>14 Birch Street<br>Plains, PA 18705 | *<br>* | |
| NANCY MARX<br>14 Birch Street<br>Plains, PA 18705 | *<br>* | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff, Berkley Insurance Company ("Berkley" or the "Surety"), by its undersigned attorneys and pursuant to the Federal Rules of Civil Procedure, files this Complaint against the Defendants, Marx Sheet Metal & Mechanical, Inc. ("Marx Sheet Metal"), Marx NJ Group, LLC ("Marx NJ"), Joseph Marx, Angela Marx, Thomas Marx, and Nancy Marx (collectively referred to herein as "Defendants," the "Indemnitors" or "Undersigned"), and states:

### Parties, Jurisdiction, and Venue

1. Plaintiff Berkley is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Greenwich, Connecticut.

2. Defendant Marx Sheet Metal is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Wilkes Barre, Pennsylvania.

3. Defendant Marx NJ is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business in Bound Brook, New Jersey. Marx NJ supplied sheet metal to Marx Sheet Metal Projects in Pennsylvania. Marx NJ also had its own projects in the Commonwealth of Pennsylvania.

4. Defendants Joseph Marx and Angela Marx are individuals who reside at 24 Clifton Court, Hanover Twp., PA 18706.

5. Defendants Thomas Marx, Sr. and Nancy Marx are individuals who reside at 14 Birch Street, Plains, PA 18705.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

30494956v.2

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 as Marx Sheet Metal carries on a regular business in Wilkes Barre, Pennsylvania, and a substantial part of the events giving rise to the claim occurred within this judicial district.

## Facts Applicable to All Counts

*Construction Contracts and Surety Bonds*

8. Marx Sheet Metal is a family run mechanical HVAC, plumbing, and service company operating predominantly in Pennsylvania.

9. Marx NJ is a sheet metal fabricator which operates under the name Halo Marx. Marx NJ serves as the New Jersey office of Marx Sheet Metal and operates in Pennsylvania, along with New Jersey and New York State.

10. Thomas Marx, Sr. is the vice-president of Marx Sheet Metal and is married to Nancy Marx.

11. Joseph Marx is the president of Marx Sheet Metal and is married to Angela Marx.

12. At the Indemnitors' request, Berkley, as surety, issued payment and performance bonds (the "Construction Bonds") on behalf of Marx Sheet Metal and Marx NJ (collectively "Marx") for the construction contracts that Marx was to perform, including, but not limited to, the following projects (collectively, the "Bonded Projects"):

| Bond No. | Obligee | Ref. No. | Project |
| --- | --- | --- | --- |
| 0231026 | TN Ward Co | 20-053 | Subcontract - Project 2086 - Wind Creek Bethlehem Hotel Expansion - HVAC & Plumbing. 77 Wind Creek Blvd.; Bethlehem, PA. |
| 0242101 | Target Building Const. Inc. | 21-348 | Contract 228001-S001-Project 22-8-001-CHOP Main East AHU Replacement - 3401 Civic Center Blvd, Philadelphia, PA |
| 0242100 | Delaware Valley School District | 22-100 | Mechanical Construction - Miscellaneous 2022 Renovations Mechanical Work, Miscellaneous renovations |

30494956v.2

-4-

| | | | |
|---|---|---|---|
| 0242091 | LR Costanzo Co. Inc. | 21-701 | Subcontract -Nautilus Cryptomining HVAC work, 351 Electron Ave, Berwick PA 18603 |
| 0242088 | City of Wilkes Barre | 22-028 | Toyota SportsPlex HVAC Improvement, 38 Coal Street, Wilkes-Barre, PA |
| 0242083 | Trane USA Inc. | 21-496 | Subcontract - St. Luke's Project 21-496 - PO No. 21-496-301 & No. 21-496-302 - Payment Only - HVAC Control Systems. |
| 0242087 | Target Building Const. Inc. | 20-263 | Subcontract - Project 21-8-015-CHOP Wood Decant Main 1A-BCC1 & BCC 2, 3401 Civic Center Blvd, Philadelphia, PA |
| 0237814 | Monroe County | 21-198 | Contract #3 HVAC Construction Monroe County Courthouse Expansion |
| 0237811 | Irwin & Leighton | 21-111 | Subcontract - Mechanical (HVAC) Work Complete-TC Amazon - Jessup, PA TI, 45 Valley View Drive, Jessup, PA |
| 0237812 | Sordoni Construction | 20-295 | Subcontract - Project: Delivery Station DPL 7, 1156 Four Star Dr., Mount Joy, PA; Subcontract No. 4819-002, BP 2301-HVAC - Amazon warehouse |
| 0237805 | A/Z Construction | 20-208 | Job X-6-0933 Messer Laser Mix Services - HVAC & Plumbing, Messer Gas, 1108 Corporate Center Drive E, Tobyhanna, PA 18466 |
| 0231028 | Target Building Const. Inc. | 20-141 | 20-141 - CHOP Services & Logistics - 6400 Market Street, Millbourne, PA 19802 -Logistics Center/Warehouse - Sheetmetal Ductwork |
| 0231011 | Fahs Construction Group | 20-089 | 2-20-010 SUNY Binghamton University Science IV phase 2 HVAC & Plumbing |
| 0228473 | Mechanicsburg Area School District | 20-015 | Mechanicsburg Area School District - Broad Street Elementary Additions & Renovations-CRA Project No. 3082-HVAC |
| 0218059 | Dept of General Services Bureau | 18-669 | Pike County Maint. Construction of new Maint. Garage. |
| 0214784 | Fidelis Design & Construction, LLC | 17-657 | Replace Steam Pressure Stations, Wilkes-Barre VA Medical Center, 1111 East End Blvd, Willes-Barre, PA |
| 0223189 | Honeywell Int. | 19-784 | Subcontract - Steam Decentralization Project - PO No. 4413796484. Work is for HVAC upgrades for various locations at Marywood University. |
| 0210104 | Fidelis Design & Construction, LLC | 17-652 | Renovate Kitchen, Wilkes-Barre VA Medical Ctr 1111 E End Blvd Wilkes-Barre, PA |

| | | | |
|---|---|---|---|
| 0218066 | Cornerstone Contracting, 620 Inc. | 16-625 | VAMC Wilkes-Barre Building 1 HVAC Upgrade (Project No. 693-13-105) - CCI Job No PAVA18002, 1111 East End Blvd, Wilkes-Barre, PA |
| 0210091 | Senate Builders & Construction Managers, Inc. | 16-636 | Bldg 11 Wings Renovations - Tobyhanna Army Depot, Tobyhanna, PA. |

      13.     At the Indemnitors' request, Berkley, as surety, issued wage and benefit bonds (the "Union Bonds") on behalf of Marx for certain labor unions, including local unions and benefit funds, with respect to collective bargaining or other agreements that Marx entered into for the supply of labor on various projects, including, but not limited to the following labor unions, locals, and associated organizations:

| **Bond Number** | **Obligee** |
|---|---|
| 0237816 | Sheet Metal Workers' Local Union No. 19 |
| 0210100 | Trustees of the Sheet Metal Workers Local No. 25 |
| 0237823 | Trustees of the Plumbers Union Local 690 of Philadelphia |
| 0231027 | Local Union 22 |
| 0231021 | Steamfitters Local Union No. 420 |
| 0231019 | UA Plumbers Local 24 |
| 0231017 | Plumbers & Pipefitters Local 9 Welfare Fund |
| 0231018 | Trustees of the Plumbers Union Local 690 of Philadelphia |
| 0218063 | UA Local Union 373 Plumbers & Steamfitters |
| 0210107 | Sheet Metal Workers' Local Union No. 19 |

      14.     Berkley, as surety, issued the Construction Bonds and the Union Bonds on behalf of Marx Sheet Metal and Marx NJ.

30494956v.2

*General Agreement of Indemnity*

15. In partial consideration for Berkley agreeing to issue the Bonds on behalf of Marx Sheet Metal and Marx NJ, the Indemnitors executed a General Agreement of Indemnity in favor of Berkley on or about August 18, 2017 (the "Indemnity Agreement"). A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit A**.

16. The Indemnity Agreement provides, among other things, a broad indemnity provision requiring, among other things, the Indemnitors to indemnify and hold harmless Berkley, from and against all demands, liability, and loss as a result of Berkley having issued the Bonds as follows:

> **1.01**. The Undersigned, jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty of any kind whatsoever, including without limitation, interest costs, court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professionals or service providers of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse Surety for any payment by it, related to or by reason of: (i) this Agreement, a Contract or Bonds and/or Surety's procuring or enforcement of the same or the prosecution, investigation or defense of any Claim against or by Surety; (ii) any loans, credits, advances or monies guaranteed, lent, advanced or extended by Surety from time to time to or for the account of any Undersigned; (iii) Surety having accepted Collateral as security for the obligations of the Undersigned to Surety or the enforcement of Surety's interest therein; or (iv) the occurrence of an **Event of Default** and any prosecution, investigation, defense or settlement of the same by Surety; or (v) any action or inaction by Surety or liability incurred or sustained by Surety in reliance upon representations or statements made by Indemnitors or their attorneys and representatives regarding defenses available to an Indemnitor and/or Surety to claims made against such Bonds (**all of the foregoing referred to singly as an "Indemnified Claim" or an "Indemnified Expense" and collectively as an "Indemnified Claim or Expense"**). The Undersigned shall also pay to the Surety

interest on all such payments, from the date thereof, at the maximum legal post-judgment rate permitted by New York law, compounded daily.

**Exhibit A**, § 1.01 (emphasis added).

17.  The Indemnity Agreement further provides Berkley the right to demand the immediate posting of collateral from the Indemnitors with respect to an Indemnified Claim as follows:

> **1.02**. To further protect, exonerate and save harmless the Surety, Indemnitors shall pay over to the Surety, its successors and assigns, all sums of money which the Surety shall pay or cause to be paid or may be potentially liable to pay related to or by reason of an Indemnified Claim; such payment to be made to the Surety as soon as Surety notifies Indemnitor to deposit such funds with Surety, whether or not the Surety established or increased any reserve or shall have paid out such sum or any part thereof or not; and Surety is hereby authorized to use such funds, or any part thereof, in payment or settlement of any such demand, claim, liability, loss, charges, costs and expenses or other obligations Indemnitors may be liable to Surety under the terms of this Agreement. Surety shall have no obligation to invest or otherwise provide interest on such funds paid to Surety by Indemnitor and Surety may commingle the funds with other funds of the Surety. Surety may apply any unused funds as collateral security to any other Bond or obligation of the Indemnitor under this Agreement.

*Id.* at § 1.02.

18.  Under the Indemnity Agreement, an "Event of Default" is defined as the following:

> **4.01 Default.** "Event of Default" shall mean: (i) the inaccuracy of any representation, warranty or other information made or provided by any of the Undersigned in this Agreement or any applications or other materials submitted to Surety in connection herewith or with any Contract or Bond; or (ii) the failure, delay or inability of any of the Undersigned to fully perform or observe any term, covenant or condition of this Agreement, or of a Contract or Bonds, whether actual or alleged; or (iii) the failure, delay or inability of any of the Undersigned to promptly and fully pay when due any Indemnified Claim or Expense, or any interest thereon, arising in connection with the performance of a Contract; or (iv) the failure to diligently prosecute the work under any Contract; or (v) in the event work has

30494956v.2

>ceased or been suspended on any Contract or Contracts covered by any said Bonds; or (vi) in the sole opinion of the Surety, the Contract funds to be paid are insufficient to pay for the cost of performing the Contract; or (vii) the insolvency of any of the Undersigned as defined under, or initiation by or against any of the Undersigned of a proceeding under, any section or chapter of the bankruptcy laws of the United States or amendments thereto or any state bankruptcy insolvency or similar law; or (viii) the appointment of a receiver, trustee or custodian for all or a material part of the assets of any of the Undersigned; or (ix) the attempted or actual assignment, conveyance or further encumbrance of the Collateral or any part thereof or interest thereon, directly or indirectly, by any of the Undersigned, whether voluntarily or by operation of law, without prior written notice to Surety; or (x) the attempted or actual assignment, adjustment, settlement or extension of debts by any of the Undersigned with its, his or her respective creditors generally, as the case may be; or (xi) the joint or several default by any of the Undersigned in the performance of any agreement with any lender, with such default resulting in or permitting the acceleration of any indebtedness of the Undersigned for borrowed money; or (xii) a declaration of default by an Obligee under any Contract or Bonds; or (xiii) the ascendance, disappearance, incompetence, felony conviction or imprisonment of any of the Undersigned; or (xiv) if any of the Undersigned is a corporation or partnership, any merger, consolidation, reorganization, dissolution or other change in the character, identity, control, beneficial ownership or existence of any of the Undersigned or the sale of substantially all of the assets of any of the Undersigned; or (xv) the filing, initiation or commencement of any action or proceeding of the exercise of any rights by any person which deprives or impairs Undersigned's use of its plant, machinery, equipment, plans, drawings, tools, supplies, inventory or other materials utilized by Undersigned in connection with the performance of a Contract; or (xvi) the happening of any event which, in Surety's sole opinion, may expose Surety to any Indemnified Claim or Expense; or (xvii) the determination by Surety that the occurrence of any of the events set forth above is likely to occur and, after receipt of notice thereof, any of the Undersigned shall fail to provide evidence reasonably to the contrary.

*Id.* at § 4.01.

19.     With respect to claims that are made against any of the Bonds, the Indemnity Agreement provides Berkley with broad discretion and the exclusive right to compromise or pay claims:

> **2.01 Claim Settlement**. The Surety shall have the exclusive right in its name and/or the name of any Indemnitor to decide and determine whether any Indemnified Claim, or any claim, off-set or other right of an Indemnitor on a bonded Contract or Contract in which the Surety has an interest, shall or shall not be paid, compromised, settled, resisted, defended, prosecuted, tried or appealed, and the Surety's decision thereon, absent fraud, shall be final, conclusive and binding upon the Indemnitors. An itemed statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety or the copies of the checks or drafts for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety such amounts with interest from the day of payment.

*Id.* at § 2.01.

20. The Indemnity Agreement also requires the Indemnitors to provide Berkley with full and free access to their books, records, and accounts, including records related to their financial condition, status of work under any Contract, and status of claims, among other documents and records:

> **10.01 Surety's Right to Information.** At any time during this Agreement and until such time the liability of the Surety has been released or terminated, the Undersigned shall furnish to Surety, and the Surety shall have the right to access such information as it may request from time to time concerning their respective financial condition, any of their respective operations, the status of work under any Contract or Bonds and the condition of the performance in connection therewith (the "Business Records"). All financial institutions, depositories, materialmen, supply houses, and other persons, firms or corporations are hereby authorized to furnish Surety any information requested regarding the Undersigned, including without limitation the status of the work under any Contract being performed by Indemnitors, the condition of the performance of any Contract and the payment of accounts, and all rights to the protection of such information as confidential, proprietary or trade secrets are hereby waived. The undersigned specifically authorize the Surety's use of consumer credit reports for purposes of underwriting specific bond requests. Upon the occurrence of an Event of Default, the Undersigned shall immediately surrender all Business Records requested by Surety to Surety or its designee at a place and in a manner designated by Surety.

30494956v.2

*Id.* at § 10.01.

***Events of Default and Indemnified Claims or Expenses***

21.     There came a time in or about September 2022 that Marx became unable to fully perform its obligations under the various contracts and agreements associated with the Bonded Projects and the Union Bonds, including its inability to pay debts due to various subcontractors, suppliers, labor Unions and locals with respect to the Bonded Projects. These failures constituted Events of Default under the Indemnity Agreement.

22.     As a result of Marx's financial difficulties, the Surety began to receive claim notices from the various Unions to which had been issued Benefit Bonds, as well as notices of problems from various bonded obligees that Marx was not performing properly on the various Bonded Projects. These claims and other notices also constituted Events of Default under the Indemnity Agreement.

23.     Since that time, numerous bond claims were submitted to Berkley by owners, subcontractors, suppliers, labor contractors, Unions and others (the "Claimants"). Berkley proceeded to investigate and resolve the claims made against its various bonds.

24.     Marx would also request that Berkley pay certain debts due to its subcontractors, suppliers, labor contractors, Unions and others because it was unable to satisfy these debts.

25.     Once Berkley received the bond claims or requests from Marx, it conducted an independent investigation which included obtaining information on the claims from both the Claimants and from Marx, and from other sources, regarding the claims, Marx's alleged debts, and the associated Bonded Projects.

26.     By letter dated October 4, 2022, and sent to each of the Indemnitors pursuant to the terms of the Indemnity Agreement, Berkley demanded that the Indemnitors, jointly and severally,

provide Berkley with collateral in the amount of $8,800,000.00, in the form of cash or a reasonable equivalent (the "Demand Letter"). The Indemnitors failed and refused to comply with this demand. A true and accurate copy of the Demand Letter is attached hereto as **Exhibit B**. This failure also constituted an Event of Default under the Indemnity Agreement.

27. As a result of Marx's inability to meet its obligations pursuant to its contracts for the various Bonded Projects and agreements associated with the Union Bonds, Berkley established an escrow or trust account, accepted bonded contract funds into the escrow account, provided funding in order to satisfy obligations under its Bonds, and made disbursements from the escrow account related to the Bonded Projects and union obligations. Berkley also made payments under its Bonds directly to Claimants. For example and as of March 18, 2023, Berkley has directly paid claims totaling $3,292,956.42 with regard to the Wind Creek project (Bond No. 0231026); directly paid $1,688,617.37 with regard to the CHOP Services & Logistics project (Bond No. 0231028); directly paid $2,143,891.14 with regard to the Monroe County Courthouse project (Bond No. 0237814); and directly paid over $400,000.00 with regard to the Union Bonds.

28. As a result of Marx's failures and inability to satisfy its obligations with respect to the Bonded Projects, Berkley has made direct payments pursuant to its Bond obligations in an amount exceeding $9,700,000.00.

29. Berkley also incurred expenses, currently amounting to approximately $600,000 in attorneys' fees and consultants' fees, which are fully recoverable from the Indemnitors under the Indemnity Agreement.

30. Marx also failed to pay for certain bond premiums.

31. A summary of the amounts received and paid, as well as Berkley's total loss, as of March 18, 2023 is as follows:

30494956v.2

| Project Receipts and Berkley Funding (a) | Project Disbursements (b) | Other Costs, Expenses, and Loses (c) | Escrow Account Subtotal (a-b-c) | Berkley Direct Payments (e) | Berkley's Total Loss as of March 18, 2023 (a-b-c-e) |
|---|---|---|---|---|---|
| $7,985,789.64 | $7,738,425.77 | $157,227.55 | $90,136.32 | $10,313,694.94 | **$10,223,558.62** |

32.     An itemization of the escrowed project receipts, together with payments made from the escrow account totaling $90,136.32 as of March 18, 2023, is attached hereto as **Exhibit C**. An itemization of the Berkley Direct Payments totaling $10,313,694.94 (including attorneys' fees and consultants' fees) as of March 18, 2023, is attached hereto as **Exhibit D**.

33.     Berkley will continue to incur expenses, all of which are fully recoverable from the Indemnitors under the Indemnity Agreement. Berkley's expenses going forward will include, but are not limited to, all professional fees and expenses, as well as other costs incurred with respect to losses suffered as a result of Berkley having issued Bonds for the Bonded Projects. These losses and any future losses (and expenses) are all recoverable under the Indemnity Agreement and will continue to increase until paid by the Indemnitors.

34.     Berkley anticipates that it will ultimately suffer a total loss of approximately $17,000,000.00.

35.     The Indemnitors have failed and refused to comply with Berkley's demands for collateral.

36.     As of the date of this Complaint, Berkley has paid fees and expenses, including attorneys' and consultants' fees, which are recoverable pursuant to the terms of the Indemnity Agreement.

30494956v.2

37. Berkley will continue to incur and pay attorneys' and consultants' fees and expenses in connection with the issuance of Bonds to Marx and in enforcing the terms and conditions of the Indemnity Agreement.

38. The extent of Berkley's ultimate exposure to losses under its Bonds, and its exposure to incurring attorneys' fees, consultants' fees, and other expenses recoverable pursuant to the terms of the Indemnity Agreement, cannot be fully and accurately quantified at this time.

39. The Indemnitors materially breached the Indemnity Agreement by failing to provide collateral security to Berkley as requested.

40. The Indemnitors further materially breached the Indemnity Agreement by failing to indemnify Berkley from and against all losses, claims, demands, and liability under the Bonds.

41. These material breaches of the Indemnity Agreement constitute "Events of Default" under the Indemnity Agreement.

42. Berkley anticipates that it will continue to incur losses, costs, and expenses under its Bonds and it expects to receive additional claims against its Bonds for which the Indemnitors are obligated to exonerate, indemnify, keep indemnified, reimburse, and save and hold Berkley harmless from and against all liability and loss.

**Count I**
**Breach of Contract – Specific Performance/Deposit of Collateral**

43. Berkley incorporates by reference the preceding paragraphs of this Complaint as if fully stated herein.

44. Pursuant to the terms of the Indemnity Agreement, the Indemnitors agreed, jointly, severally, and individually, to provide collateral to the Surety upon the Surety's demand.

45. Despite Berkley's demand for collateral on October 4, 2022, the Indemnitors failed and refused to provide collateral to the Surety as required by the terms of the Indemnity Agreement.

46. The Indemnitors failed and refused to provide collateral to Berkley in the amount of $8,800,000.00, as requested by Berkley's collateral demand on October 4, 2022.

47. Berkley continues to face substantial exposure and potential liability with respect to the claims against its Bonds. Berkley also faces exposure with respect to attorneys' and consultants' fees and expenses, which Berkley will continue to incur.

WHEREFORE, Berkley respectfully requests that this Court enter an order requiring Defendants, Marx Sheet Metal & Mechanical, Inc., Marx NJ Group, LLC, Joseph Marx, Angela Marx, Thomas Marx, and Nancy Marx, jointly and severally, to deposit collateral security with Berkley in the amount of at least $8,800,000.00, provide collateral to Berkley as Berkley may subsequently demand, and award to Berkley such other and further relief as is just and equitable, plus attorneys' fees, costs, and prejudgment and post-judgment interest.

**Count II**
**Breach of Contract – Contractual Indemnity**

48. Berkley incorporates by reference the preceding paragraphs of this Complaint as if fully stated herein.

49. Pursuant to the terms of the Indemnity Agreement, the Indemnitors agreed, among other things, jointly, severally, and individually, to indemnify, hold harmless, and reimburse Berkley for all losses, costs, and expenses, including, but not limited to, attorneys' and consultants' fees, incurred by Berkley in any way related to Berkley's issuance of the Bonds.

50. Berkley has issued payments in the millions of dollars to Bond claimants as a result of having issued Bonds on behalf of Marx, and is at risk of having to make additional payments

pursuant to its obligations under the Bonds. The Indemnitors are obligated by contract to immediately exonerate and indemnify Berkley for these losses, pursuant to the terms of the Indemnity Agreement. The total net due to Berkley as a result of such losses is $10,223,558.62 as of March 18, 2023. These realized losses are recoverable immediately under the Indemnity Agreement. Berkley's losses, costs and expenses will continue to increase.

51. Berkley will continue to incur such losses, costs and expenses, including attorneys' fees, which are fully recoverable from the Indemnitors under the Indemnity Agreement. Berkley's expenses going forward will include, but are not limited to, legal and accounting fees, and other costs incurred in connection with this action. These losses and potential losses (and expenses) are recoverable under the Indemnity Agreement and will continue to increase until paid by the Indemnitors, in connection with this action and otherwise.

52. Despite demand, and in material breach of and default under the Indemnity Agreement, the Indemnitors have failed and refused to indemnify Berkley for incurred and anticipated losses, costs, and expenses, and they have failed to provide the collateral demanded by Berkley to provide it security in connection with both incurred and anticipated losses.

53. Berkley's exposure to damages includes Performance Bond claims, Payment Bond claims, and Wage and Benefit Bond claims. Berkley anticipates that it will ultimately suffer losses, costs, and expenses of approximately $17,000,000.00, including with respect to performing Marx's contractual obligations to complete the remaining work on various Bonded Projects.

54. As previously set forth, numerous Events of Default have occurred under the Indemnity Agreement including, but not limited to: claims against Berkley for the various Bonded Project; claims against Berkley's Union Bonds; Marx's failure, delay, or inability to fully perform term, covenants, and conditions of its Agreements, Contracts, and Bonds; the Indemnitors' the

failure, delay or inability to promptly and fully pay when due any Indemnified Claim or Expense; Marx's failures to pay for the cost of performing its Agreements and Contracts due to insufficient funds; and Berkley's substantial losses, costs and expenses incurred as a result of Defendants' failings and breaches of the Indemnity Agreement, among other Events of Default.

55. Berkley has incurred losses, costs, and expenses as a result of having issued the Bonds on behalf of Marx and has and will continue to incur attorneys' fees and consultants' fees as a consequence of issuing the Bonds and in enforcing the terms and conditions of the Indemnity Agreement, all of which are recoverable under the Indemnity Agreement.

56. Berkley anticipates that it may receive additional claims against its Bonds for which the Indemnitors are obligated to indemnify and reimburse Berkley from all demands, liability, and loss.

57. The extent of Berkley's ultimate losses under its Bonds, and extent of attorneys' fees, consultants' fees, and other expenses that Berkley will ultimately expend, all of which are recoverable pursuant to the terms of the Indemnity Agreement, cannot be fully and accurately quantified at this time.

WHEREFORE, Berkley demands that judgment be entered in its favor and against the Defendants, Marx Sheet Metal & Mechanical, Inc., Marx NJ Group, LLC, Joseph Marx, Angela Marx, Thomas Marx, and Nancy Marx, jointly, severally, and individually in the amount of $17,000,000.00 or such other amount as Berkley demonstrates, plus prejudgment interest, post judgment interest, costs, attorneys' fees, consultants' fees, and such other and further relief in favor of Berkley which is just and equitable.

**Count III**
**Breach of Contract – Specific Performance/Access to Books and Records**

58. Berkley incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

59. The Indemnity Agreement requires the Indemnitors, jointly, severally, and individually, to provide Berkley with access to their books, records, and accounts.

60. The Indemnity Agreement further provides that "[a]ll financial institutions, depositories, materialmen, supply houses, and other persons, firms or corporations are hereby authorized to furnish Surety any information requested regarding the Undersigned."

61. While the Indemnitors have provided certain information to Berkley, the Indemnitors have not provided Berkley with full access to their books, records, and accounts, as required by the Indemnity Agreement and at least one non-party to this action has refused to provide Berkley with access to Indemnitors' financial information and records despite Berkley's request.

62. The Indemnitors have breached the Indemnity Agreement by failing to provide full and free access to all their books, records, and accounts as required by the Indemnity Agreement.

WHEREFORE, Berkley respectfully requests that this Court enter an Order requiring the Defendants, Marx Sheet Metal & Mechanical, Inc., Marx NJ Group, LLC, Joseph Marx, Angela Marx, Thomas Marx, and Nancy Marx, jointly, severally, and individually provide Berkley with access to their books, records, and accounts, as required by the terms and provisions of the Indemnity Agreement, and for such other and further relief in favor of Berkley as is just and equitable.

30494956v.2

Respectfully submitted,

WHITE AND WILLIAMS LLP

/s/ William J. Taylor
William J. Taylor (PA 40794)
Craig H. O'Neill (PA 84178)
White and Williams, LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
(215) 864-7000
(215)864-7123 (fax)
oneillc@whiteandwilliams.com
taylorw@whiteandwilliams.com
David D. Gilliss
Eric G. Korphage
White and Williams, LLP
600 Washington Ave., Ste. 303
Towson, MD 21204
(443) 761-6500
(443) 761-6519
gillissd@whiteandwilliams.com
korphagee@whiteandwilliams.com
*Attorneys for Plaintiff Berkley Insurance Corporation*

30494956v.2