# Exhibit B



October 4, 2022

VIA FEDERAL EXPRESS AND ELECTRONIC MAIL rcohen@cohenseglias.com;
joe.marx@marxhvac.com; tom.marx.sr@marxhvac.com

Marx Sheet Metal & Mechanical, Inc.          Marx NJ Group, LLC
c/o Roy Cohen                                 c/o Roy Cohen
Cohen Seglias                                 Cohen Seglias
1600 Market Street                            1600 Market Street
32nd Floor                                    32nd Floor
Philadelphia, PA 19103                        Philadelphia, PA 19103

Joseph Marx                                   Angela Marx
24 Clifton Court                              24 Clifton Court
Hanover Twp, PA 18706                         Hanover Twp, PA 18706

Thomas Marx Sr.                               Nancy Marx
14 Birch Street                               14 Birch Street
Plains, PA 18705                              Plains, PA 18705

**Re:    Marx Sheet Metal & Mechanical, Inc.**
**Open Bonded Projects**
**Payment and Performance Bond Claims and Demands**
**Outstanding Obligations**

<u>**DEMAND FOR COLLATERAL**</u>

Dear Indemnitors:

I am a vice president for Berkley Surety, the claims representative for Berkley Insurance Company ("Berkley" or "Surety"), the surety company which issued approximately 40 payment and performance bonds on behalf of Marx Sheet Metal & Mechanical, Inc. and/or Marx NJ Group, LLC (collectively "Marx") in relation to multiple projects. Marx has advised the Surety that it is in financial distress and Berkley is in the process of investigating the depth of Marx's financial problems. In that regard, Berkley has received demands from certain of Marx's creditors, including local unions and benefit funds to which Marx is indebted, seeking the payment of monies alleged to be due in excess of $4 million. The claims and demands by the unions and benefit funds have been presented by Marx to the Surety as being urgent and requiring the immediate attention of Berkley. Marx has represented to the Surety that without immediate payment, the local unions will not allow their members to work on any of Marx's projects, whether bonded or not. Marx has also represented to Berkley that Marx has outstanding prior tax obligations in the approximate of $6 million and a cost to complete on just the bonded projects of approximately $14,000,000.

Berkley is in the process of investigating Marx's financial condition. From Marx's own records, it appears that Marx is operating with a cash deficit of $8,800,000 for the bonded projects, which calls into question Marx's ability to complete all of its open projects. Further, it is likely that the amount of funds necessary for the Surety to honor its obligations to the bond obligees will continue to increase beyond Marx's cash deficit, thereby exposing the Surety to additional significant losses and expenses. For example, MDD, Berkley's accounting consultant, was informed that a net profit of $2,730,931 (which Marx previously represented as being earned by Marx for the period from October 2020 through September 2021), was updated to reflect **a net loss of $16,361,958** for the same period. This $19,000,000 negative swing in income, in and of itself, calls into question all of Marx's estimates, projects, and ability to perform on contracts.

Please be advised that in consideration for Berkley having issued bonds on behalf of Marx, Marx and certain individuals identified herein executed a certain General Agreement of Indemnity (the "Indemnity Agreement") in favor of the Surety. The Indemnity Agreement was signed by Marx and Marx NJ Group, LLC, on or about August 18, 2017, and also by individual indemnitors of the Surety, consisting of: Donald Marx Sr. (deceased), Joseph Marx, Angela Marx, Thomas Marx Sr., and Nancy Marx (collectively, "Indemnitors"). A copy of the Indemnity Agreement is enclosed with this letter for your review. The Indemnity Agreement contains the following provisions (in relevant part), among others:

> **1.01.** The Undersigned, jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty of any kind whatsoever, including without limitation, interest costs, court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professionals or service providers of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse Surety for any payment by it, related to or by reason of: (i) this Agreement, a Contract or Bonds and/or Surety's procuring or enforcement of the same of the prosecution, investigation or defense of any Claim against or by Surety; (ii) any loans, credits, advances or monies guaranteed, lent, advanced or extended by Surety from time to time to or for the account of any Undersigned; (iii) Surety having accepted Collateral as security for the obligations of the Undersigned to Surety or the enforcement of Surety's interest therein; or (iv) the occurrence of an Event of Default and any prosecution, investigation, defense or settlement of the same by Surety; or (v) any action or inaction by Surety or liability incurred or sustained by Surety in reliance upon representations of statements made by Indemnitors or their attorneys and representatives regarding defenses available to an Indemnitor and/or Surety to claims made against such Bonds (all of the foregoing referred to singly as an "Indemnified Claim" or an "Indemnified Expense" and collectively as an "Indemnified Claim or Expense"). The Undersigned shall also pay to the Surety interest on all such payments, from the date thereof, at the maximum legal post-judgment rate permitted by New York law, compounded daily.

**1.02.**  To further protect, exonerate and save harmless the Surety, Indemnitors shall pay over to the Surety, its successors and assigns, all sums of money which the Surety shall pay or cause to be paid or may be potentially liable to pay related to or by reason of an Indemnified Claim; such payment to be made to the Surety as soon as Surety notifies Indemnitor to deposit such funds with Surety, whether or not the Surety established or increased any reserve or shall have paid out such sum or any part thereof or not; and Surety is hereby authorized to use such funds, or any part thereof, in payment or settlement of any such demand, claim, liability, loss, charges, costs and expenses or other obligations Indemnitors may be liable to Surety under the terms of this Agreement.  Surety shall have no obligation to invest or otherwise provide interest on such funds paid to Surety by Indemnitor and Surety may commingle the funds with other funds of the Surety.  Surety may apply any unused funds as collateral security to any other Bond or obligation of the Indemnitor under this Agreement.

**3.01 Assignment and Security Interest.**  As collateral security for the prompt and timely performance of all liabilities, obligations, and duties of the Undersigned to Surety under this Agreement, any Bonds or Contract, whether now existing or hereafter arising, the Undersigned hereby assign, convey, transfer and set over to Surety (the "Assignment"), and grant to Surety a general lien and continuing security interest in and to, all of their respective right, title and interest in and to the following descripted property (the "Collateral"): … (x) any and all Additional Collateral designated by Surety; and (xi) any and all additions, substitutions, replacements, returns, products or proceeds of the Collateral hereinabove described. …

**3.02 Additional Collateral.**  If Surety, in its sole discretion, determines that the Collateral is not sufficient to protect Surety's interests or if Surety deems itself insecure, Surety may call for additional collateral ("Additional Collateral") satisfactory to Surety, and the Undersigned shall furnish Additional Collateral immediately upon demand by Surety.

**4.01 Default.**  "Event of Default" shall mean: (i) the inaccuracy of any representation, warranty or other information made or provided by any of the Undersigned in this Agreement or any applications or other materials submitted to Surety in connection herewith or with any Contract of Bond; or (ii) the failure, delay or inability of any of the Undersigned to fully perform or observe any term, covenant or condition of this Agreement, or of a Contract off Bonds, whether actual or alleged; or (iii) the failure, delay or inability of any of the Undersigned to promptly and fully pay when due any Indemnified Claim or Expense, or any interest thereon, arising in connection with the performance of a Contract; or (iv) the failure to diligently prosecute the work under any Contract; of (v) in the event work has ceased or been suspended on any Contract or Contracts covered by any said Bonds; or (vi) in the sole opinion of the Surety, the Contract funds to be paid are insufficient to pay for the cost of performing the Contract; or (vii) the insolvency of any of the Undersigned as defined under, or initiation by or against any of the

Undersigned of a proceeding under, any section or chapter of the bankruptcy laws of the United States or amendments thereto or any state bankruptcy, insolvency or similar law; or (viii) the appointment of a receiver, trustee or custodian for all or a material part of the assets of any of the Undersigned; of (ix) the attempted or actual assignment, conveyance or further encumbrance of the Collateral or any part thereof or interest thereon, directly or indirectly, by any of the Undersigned, whether voluntarily or by operation of law, without prior written notice to Surety; or (x) the attempted or actual assignment, adjustment, settlement or extension of debts by any of the Undersigned with its, his or her respective creditors generally, as the case may be; or (xi) the joint or several default by any of the Undersigned in the performance of any agreement with any lender, with such default resulting in or permitting the acceleration of any indebtedness of the Undersigned for borrowed money; or (xii) a declaration of default by an Obligee under any Contract or Bonds; or (xiii) the ascendance, disappearance, incompetence, felony conviction or imprisonment of any of the Undersigned; or (xiv) if any of the Undersigned is a corporation or partnership, any merger, consolidation, reorganization, dissolution or other change in the character, identity, control, beneficial ownership or existence of any of the Undersigned or the sale of substantially all of the assets of any of the Undersigned; or (xv) the filing, initiation or commencement of any action or proceeding or the exercise of any rights by any person which deprives or impairs Undersigned's use of its plant, machinery, equipment, plans, drawings, tools, supplies, inventory or other materials utilized by Undersigned in connection with the performance of a Contract; or (xvi) the happening of any event which, in Surety's sole opinion, may expose Surety to any Indemnified Claim or Expense; or (xvii) the determination by Surety that the occurrence of any of the events set forth above is likely to occur and, after receipt of notice thereof, any of the Undersigned shall fail to provide evidence reasonably to the contrary.

During the course of the Surety's investigation, the Surety has determined that one or more Events of Default have occurred, specifically such events described within 4.01 (ii), (iii), (vi), (xvi) and/or (xvii). The Surety reserves its right to identify additional Events of Default as they are discovered during the Surety's continued investigation, litigation, or otherwise.

Accordingly, and pursuant to the Indemnity Agreement as referenced above, Berkley hereby makes demand upon the Indemnitors, jointly and severally, to post collateral with Berkley in the amount of Eight Million, Eight Hundred Thousand Dollars ($8,800,000.00). Such funds must be provided to Berkley or its agents no later than 5:00 p.m. om Tuesday, October 11, 2022.

Should the Indemnitors fail to timely comply with Berkley's collateral demand, Berkley reserves its right to immediately pursue appropriate legal action against the Indemnitors. Pursuant to the terms of the Indemnity Agreement, the Indemnitors are likewise responsible for all losses, costs and expenses incurred by the Surety with regard to this matter, including consultant's and attorney's fees as well as interest incurred as a result of having issued bonds on behalf of Marx, as well as in the enforcement of the Indemnity Agreement. Accordingly, please contact Berkley's counsel, David Gilliss at the law firm White and Williams, LLP, as soon as possible so that the Indemnitors may make timely arrangements to deposit the required collateral with Berkley.

Nothing contained in this letter, nor any action or inaction on the part of the Surety, shall constitute a waiver of any rights or remedies available to the Surety under the Indemnity Agreement, applicable law, or otherwise.  The Surety specifically reserves all of its rights and remedies under the Indemnity Agreement, applicable law, and otherwise, including the right to demand additional collateral as Berkley's investigation of Marx's financial condition develops further.

Yours truly,

*Nancy Manno*

Vice President, Berkley Surety

Encls.

Cc:    David D. Gilliss, Esq. (gillissd@whiteandwilliams.com)



# General Agreement of Indemnity

This **General Agreement of Indemnity** (hereafter the "Agreement")is made and entered into by the Undersigned (individually and collectively hereafter referred to as the "Indemnitors" or "Undersigned"), who hereby agree to bind themselves, jointly and severally, for the benefit of Acadia Insurance Company, Berkley Regional Insurance Company, Berkley Insurance Company, Carolina Casualty Insurance Company, Continental Western Insurance Company, Union Insurance Company, co-sureties and/or reinsurance companies, (hereafter referred to as separately and collectively the "Surety").

**WHEREAS**, the Undersigned, in the performance of contracts and the fulfillment of its obligations generally, whether in their own names solely, in joint venture or co-venture with others, may request or be required by third parties to give or procure the execution of certain surety bonds, agreements or undertakings of suretyship, guaranties or indemnity (hereafter called "Bonds") for any obligations (where such obligations are bonded contracts, hereinafter referred to as Contracts) of the Undersigned and to renew, continue, extend or substitute, from time to time, the same or new Bonds with the same or different penalties and/or conditions; and

**WHEREAS**, at the request of the Undersigned and upon the expressed understanding that this Agreement should be given, the Surety has executed or procured , or may consider executing or procuring, Bonds for or on behalf of the Undersigned; and

**WHEREAS** , the Surety requires the Undersigned to execute and deliver this Agreement as a material inducement to the Surety in issuing any Bonds and the Surety has relied upon and shall continue to rely upon this Agreement in executing, procuring, continuing or refraining from canceling any Bonds; and

**NOW, THEREFORE**, in consideration of the mutual covenants herein contained, and other good and valuable consideration, the receipt, mutuality and sufficiency of which are hereby acknowledged, the Undersigned for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally covenant and agree with the Surety as follows:

## ARTICLE I - INDEMNIFICATION AND HOLD HARMLESS

**1.01.** The Undersigned, jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty of any kind whatsoever, including without limitation, interest costs, court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professionals or service providers of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse Surety for any payment by it, related to or by reason of: (i) this Agreement, a Contract or Bonds and/or Surety's procuring or enforcement of the same or the prosecution, investigation or defense of any Claim against or by Surety; (ii) any loans, credits, advances or monies guaranteed, lent, advanced or extended by Surety from time to time to or for the account of any Undersigned; (iii) Surety having accepted Collateral as security for the obligations of the Undersigned to Surety or the enforcement of Surety's interest therein; or (iv) the occurrence of an Event of Default and any prosecution, investigation, defense or settlement of the same by Surety; or (v) any action or inaction by Surety or liability incurred or sustained by Surety in reliance upon representations or statements made by Indemnitors or their attorneys and representatives regarding defenses available to an Indemnitor and/or Surety to claims made against such Bonds (all of the foregoing referred to singly as an "Indemnified Claim" or an "Indemnified Expense" and collectively as an "Indemnified Claim or Expense"). The Undersigned shall also pay to the Surety interest on all such payments, from the date thereof, at the maximum legal post-judgment rate permitted by New York law, compounded daily.

**1.02** . To further protect, exonerate and save harmless the Surety, Indemnitors shall pay over to the Surety, its successors and assigns, all sums of money which the Surety shall pay or cause to be paid or may be potentially liable to pay related to or by reason of an Indemnified Claim; such payment to be made to the Surety as soon as Surety notifies Indemnitor to deposit such funds with Surety, whether or not the Surety established or increased any reserve or shall have paid out such sum or any part thereof or not; and Surety is hereby authorized to use such funds, or any part thereof, in payment or settlement of any such demand, claim, liability, loss, charges, costs and expenses or other obligations Indemnitors may be liable to Surety under the terms of this Agreement. Surety shall have no obligation to invest or otherwise provide interest on such funds paid to Surety by Indemnitor and Surety may commingle the funds with other funds of the Indemnitor. Surety may apply any unused funds as collateral security to any other Bond or obligation of the Indemnitor under this Agreement

## ARTICLE II - CLAIM SETTLEMENT

**2.01 Claim Settlement** . The Surety shall have the exclusive right in its name and/or the name of any Indemnitor to decide and determine whether any Indemnified Claim, or any claim, off-set or other right of an Indemnitor on a bonded Contract or Contract in which the Surety has an interest, shall or shall not be paid, compromised, settled, resisted, defended, prosecuted, tried or appealed, and the Surety's decision thereon, absent fraud, shall be final, conclusive and binding upon the Indemnitors. An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety or the copies of the checks or drafts for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety such amounts with interest from the date of payment.

**2.02 Subordination** . The Undersigned jointly and severally subordinate all rights of indemnity, subrogation and contribution against each other to any Indemnified Claim or Expense until all obligations and duties of the Undersigned to Surety shall have been performed and satisfied in full and Surety shall have been released in full from all obligations under all Bonds.

# ARTICLE III - ASSIGNMENT AND GRANT OF SECURITY INTEREST

**3.01 Assignment and Security Interest** . As collateral security for the prompt and timely performance of all liabilities, obligations, and duties of the Undersigned to Surety under this Agreement, any Bonds or any Contract, whether now existing or hereafter arising, the Undersigned hereby assign, convey, transfer and set over to Surety (the "Assignment"), and grant to Surety a general lien and continuing security interest in and to, all of their respective right, title and interest in and to the following described property (the "Collateral"): (i) all Contracts, and any extensions or modifications thereto; (ii) all subcontracts and purchase orders let or to be let in connection with all Contracts and all proceeds of any surety Bonds supporting the same; (iii) all property constituting "accounts" as such term is defined in the Uniform Commercial Code (the "UCC") relating to Contracts; (iv) all machinery, equipment, plants, tools and materials now or hereafter about or upon the site(s) of any and all of the work referred to in any Bonds or Contract, including materials purchased for or chargeable to any Contract, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites, all manuals, computer programs, data bases and other materials relating to the use, operation or structure of any of the foregoing and all property used for or in any way in connection with the performance of Contracts constituting "equipment" as such term is defined in the UCC; (v) all property constituting "general intangibles" used for or in connection with the work performed under Contracts as such term is defined in the UCC; (vi) all property constituting "inventory" used for or in connection with the performance of Contracts as such term is defined in the UCC; (vii) all monies due or to become due to Principals on any policy of insurance carried in connection with the performance of a Contract or Contracts; (viii) all Claims against any subcontractor, laborer or materialmen, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any Contract; (ix) any and all percentages retained on account of any Contract, and any and all sums that may be due under any Contract or thereafter may become due including the right to prosecute, settle, and receive the proceeds of any demands, causes of action, Change Orders, damages or Claims relating to or arising out of any Contract; (x) any and all Additional Collateral designated by Surety; and (xi) any and all additions, substitutions, replacements, returns, products or proceeds of the Collateral hereinabove described. The Assignment described above in the case of each Contract shall become effective as of the date of any Bond guaranteeing the performance of such Contract, but only in the event of (1) any abandonment, forfeiture, delay or breach of any Contract or any breach of such Bonds; or (2) any Event of Default; or (3) the happening of any event which, in Surety's sole opinion, may expose Surety to an Indemnified Claim.
**3.02 Additional Collateral.** If Surety, in its sole discretion, determines that the Collateral is not sufficient to protect Surety's interests or if Surety deems itself insecure, Surety may call for additional collateral ("Additional Collateral") satisfactory to Surety, and the Undersigned shall furnish Additional Collateral immediately upon demand by Surety.

# ARTICLE IV - DEFAULT AND REMEDIES UPON DEFAULT

**4.01 Default** . "Event of Default" shall mean: (i) the inaccuracy of any representation, warranty or other information made or provided by any of the Undersigned in this Agreement or any applications or other materials submitted to Surety in connection herewith or with any Contract or Bond; or (ii) the failure, delay or inability of any of the Undersigned to fully perform or observe any term, covenant or condition of this Agreement, or of a Contract or Bonds, whether actual or alleged; or (iii) the failure, delay or inability of any of the Undersigned to promptly and fully pay when due any Indemnified Claim or Expense, or any interest thereon, arising in connection with the performance of a Contract; or (iv) the failure to diligently prosecute the work under any Contract; or (v) in the event work has ceased or been suspended on any Contract or Contracts covered by any said Bonds; or (vi) in the sole opinion of the Surety, the Contract funds to be paid are insufficient to pay for the cost of performing the Contract; or (vii) the insolvency of any of the Undersigned as defined under, or initiation by or against any of the Undersigned of a proceeding under, any section or chapter of the bankruptcy laws of the United States or amendments thereto or any state bankruptcy, insolvency or similar law; or (viii) the appointment of a receiver, trustee or custodian for all or a material part of the assets of any of the Undersigned; or (ix) the attempted or actual assignment, conveyance or further encumbrance of the Collateral or any part thereof or interest thereon, directly or indirectly, by any of the Undersigned, whether voluntarily or by operation of law, without prior written notice to Surety; or (x) the attempted or actual assignment, adjustment, settlement or extension of debts by any of the Undersigned with its, his or her respective creditors generally, as the case may be; or (xi) the joint or several default by any of the Undersigned in the performance of any agreement with any lender, with such default resulting in or permitting the acceleration of any indebtedness of the Undersigned for borrowed money; or (xii) a declaration of default by an Obligee under any Contract or Bonds; or (xiii) the ascendance, disappearance, incompetence, felony conviction or imprisonment of any of the Undersigned; or (xiv) if any of the Undersigned is a corporation or partnership, any merger, consolidation, reorganization, dissolution or other change in the character, identity, control, beneficial ownership or existence of any of the Undersigned or the sale of substantially all of the assets of any of the Undersigned; or (xv) the filing, initiation or commencement of any action or proceeding or the exercise of any rights by any person which deprives or impairs Undersigned's use of its plant, machinery, equipment, plans, drawings, tools, supplies, inventory or other materials utilized by Undersigned in connection with the performance of a Contract; or (xvi) the happening of any event which, in Surety's sole opinion, may expose Surety to any Indemnified Claim or Expense; or (xvii) the determination by Surety that the occurrence of any of the events set forth above is likely to occur and, after receipt of notice thereof, any of the Undersigned shall fail to provide evidence reasonably to the contrary.

**4.02 Remedies** . Upon the occurrence of an Event of Default, Surety shall have all of the rights and remedies of a secured party under New York law, this Agreement, and any other agreement between the Undersigned and Surety. In addition, the Undersigned agree that upon the occurrence of an Event of Default: (i) Surety may, in its sole discretion, and at any time and from time to time, demand payment of all obligations hereunder; (ii) Surety may proceed directly against any of the Undersigned on their obligations hereunder without proceeding first against the Collateral; (iii) to take possession of and to secure the benefit of any and all collateral; (iv) Surety shall have the right, but not the obligation, to take over performance of any one or more, or all of the Contracts and to take possession of the work and to assume all rights, including the right to all payments due for or to Indemnitor under such Contracts and of any Collateral in the completion of the Contracts, and at the sole expense of the Undersigned, to complete and perform or arrange for the completion and performance of all obligations of Indemnitors under the Contracts; and (v) Surety may endorse in the name of the Undersigned and collect any check, draft, warrant or other instrument made or issued in payment of any and all sums due or to become due as referred to in Articles III and VII, and to disburse the proceeds thereof.

## ARTICLE V - CHANGES

Surety is authorized and empowered, without notice to or knowledge of the Undersigned, to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said Contracts, including, but not limited to, any change in the time for the completion of said Contracts and to payments or advances before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any renewals, continuations, extensions or substitutions of the Bonds, with the same or different conditions, or provisions, Obligees, and with the same or larger or smaller penalties, and to take such other action as the Surety in its sole interest, may deem expedient to obtain release from liability from any Bond or Claim thereon; it being expressly understood and agreed that the Undersigned shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of the Undersigned. If any such Bond be given in an action or proceeding in any court, to recognize any attorney of record in such action or proceeding for any party thereto at the date of the execution of such Bond as the authorized representative of such party until the Surety shall have been fully discharged from liability under such Bond

## ARTICLE VI - ADVANCES AND LOANS

Surety is authorized and empowered, in its sole discretion and without any obligation to do so, to guarantee loans, to advance or lend to the Undersigned any money, which the Surety determines, for the purpose of any Contracts referred to in or guaranteed by the Bonds or pursuant to any other agreements. All money so expended, lent, advanced, or loans guaranteed from time to time to or on behalf of the Undersigned in connection therewith, including costs of investigation, administration, and/or in the completion of any Contract by the Surety, and any and all other related costs and expenses incurred by the Surety, unless repaid with interest at the maximum rate permitted by law by the Undersigned to the Surety when due, shall be presumed to be a loss for which the Undersigned shall be responsible notwithstanding that said money or any part thereof should not be so used by any of the Undersigned.

## ARTICLE VII - TRUST FUND

The Indemnitors agree and hereby expressly declare that all funds due or to become due under any Contract covered by a Bond are Trust Funds, whether in the possession of an Indemnitor or another, for the benefit and payment of all persons to whom the Indemnitor incurs obligations in the performance of a Contract for which the Surety would be liable under the Bond and for the benefit of Surety for any liability or loss it may sustain or incur by reason of or in consequence of the execution of such Bonds. Upon notice from the Surety to an Obligee, Indemnitors hereby authorize and direct the Obligee of any such Bond to pay to the Surety any and all Funds due or to become due on any Contract bonded by Surety, and upon payment of such funds the Obligee is released and discharged from any and all liability to Indemnitors in connection with the payment.

## ARTICLE VIII - NATURE OF RIGHTS

All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise, any right or remedy at anytime shall not be an election of remedy or waiver of any other right of remedy. Failure of the Surety to pursue any remedy against any one or more of the Undersigned shall not release or waive any right against any other of the Undersigned. The rights, powers and remedies given to the Surety by this Agreement shall be and are an addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Undersigned or others whether by the terms of any other agreement, by operation of law or otherwise. The Undersigned shall remain bound under the terms of this Agreement notwithstanding that Surety may from time to time, with or without notice to or knowledge of the Undersigned, have accepted or released any of the Undersigned or others from this or other agreements of indemnity or agreements granting security or collateral interests. Any and all rights which Surety may have or acquire against the Undersigned and others under any other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, Surety's rights under this Agreement.

## ARTICLE IX - <u>OTHER SURETY</u>

All of the terms and conditions of this Agreement shall inure to the benefit of (i) any surety executing Bonds as a co-surety with Surety, (ii) any surety reinsuring all or any portion of a Bond, or (iii) any surety executing Bonds at the request of Surety, as their interests may appear. Such Surety or Reinsurer shall have a direct right of action against Indemnitor to enforce this Agreement or any provision contained herein.

## ARTICLE X - <u>BOOKS, RECORDS AND INFORMATION</u>

**10.01 Surety's Right to Information.** At any time during this Agreement and until such time the liability of the Surety has been released or terminated, the Undersigned shall furnish to Surety, and the Surety shall have the right to access such information as it may request from time to time concerning their respective financial condition, any of their respective operations, the status of work under any Contract or Bonds and the condition of the performance in connection therewith (the "Business Records"). All financial institutions, depositories, materialmen, supply houses, and other persons, firms or corporations are hereby authorized to furnish Surety any information requested regarding the Undersigned, including without limitation the status of the work under any Contract being performed by Indemnitors, the condition of the performance of any Contract and the payment of accounts, and all rights to the protection of such information as confidential, proprietary or trade secrets are hereby waived. The undersigned specifically authorize the Surety's use of consumer credit reports for purposes of underwriting specific bond requests. Upon the occurrence of an Event of Default, the Undersigned shall immediately surrender all Business Records requested by Surety to Surety or its designee at a place and in a manner designated by Surety.
**10.02 Indemnitor Duty to Keep Informed** . The Undersigned agree that they shall at all times keep themselves intimately informed and knowledgeable as to the financial condition of and Claims against the Principal on any such Bond and the status of all Contracts bonded by Surety.

## ARTICLE XI - <u>NO OBLIGATION TO ISSUE BONDS</u>

Notwithstanding anything to the contrary contained herein, Surety has no obligation and has made no commitment and in its sole discretion may decline to execute, renew, continue, extend or deliver, provide or procure for execution any Bonds, including final Bonds, and may cancel any Bonds unless the Bonds state otherwise to or for the benefit of an Undersigned, and the Undersigned agree to make no claim to the contrary. If Surety executes, delivers, provides or procures the execution of bid Bonds or proposal Bonds, or agrees or consents to provide any such contract of surety, Surety retains the right in its sole discretion to decline to execute, deliver, provide or procure any final Bonds (including without limitation any performance, payment or maintenance Bonds) that may be required in connection with any award that may be made under the bid, proposal or tender for which such bid Bonds, proposal Bonds, agreement or consent was given and the Undersigned hereby waive any and all claims against Surety in connection with such action. The Undersigned acknowledge that the Surety makes no representation as to the validity or acceptability of any Bonds to any person, firm or entity of whatever sort or kind under any contract, and agree that they shall have no claim against the Surety arising out of or in any manner relating to the failure or refusal of any person, firm or entity of whatever sort or kind to award any contract to the Principals, or to accept any Bonds executed and delivered by the Surety, or that the Surety has been requested to execute and deliver.

## ARTICLE XII - <u>SUITS</u>

**12.01 Suit Against Indemnitor** . In Surety's discretion one or more Indemnitors may be sued separately. The bringing of any suit or entry of a judgment, by or in favor of Surety against the Undersigned or any other party to enforce the terms, conditions and obligations of this Agreement or a Contract or Bonds as causes of action accrue shall not prejudice or bar the bringing of other suits upon other causes of action, whether previously or subsequently arising. Each of the Undersigned shall be the agent for Undersigned for the purpose of accepting service of any process in the jurisdiction in which the Undersigned accepting the process resides, is domiciled, is doing business or is found. The Undersigned agree to be subject to the personal jurisdiction of all courts, both state and federal, operating in the State of New York and hereby consent to the jurisdiction thereof and waives any defenses or objections to actions involving this Agreement, a Contract or Bonds being initiated and maintained therein, including any claims of inconvenient or improper venue or forum. Such consent shall not preclude such action by Surety being initiated and maintained in a jurisdiction other than New York.
**12.02 Joining of Indemnitor In Pending Suit** . If any proceeding is brought against the Surety in which the Surety desires to join any one of the Indemnitors by reasons of the undertakings in this Agreement, each of the Indemnitors agrees that he will, upon written notice of the Surety to do so, voluntarily appear in such proceedings and accept service of process and other papers either personally or by an attorney of the Undersigned's choice. If any of the Undersigned fails upon such notice from the Surety so to appear, such Undersigned hereby designates the Secretary of the State or Territory in which proceedings are pending as his agent for the service of process in any such proceedings.
**12.03 Consent for Service of Process** . With respect to such action brought by the Surety on this Agreement in a jurisdiction in which one or more of the Undersigned reside, are domiciled, are doing business or are found, each of the Undersigned who are not in the jurisdiction hereby designates each of the Undersigned in such jurisdiction as his agent to receive on his behalf service of process in such action. Notice to or service of process on Indemnitors may also be made by certified mail to the address set forth below or to any change of address which Indemnitors shall have given by written notice to Surety.

## ARTICLE XIII - <u>SET-OFF</u>

All obligations described herein are absolute, unconditional and non-contingent and the Undersigned hereby waive, with respect to the performance of any of their respective obligations to Surety any claim, right of set-off or counterclaim which they might now or in the future have against Surety. Surety may reduce the amount of liability of the Undersigned to Surety by applying to such liability any obligations of Surety to the Undersigned, as applicable, which may include without limitation (i) any money payable by Surety as an insurer of the Undersigned or as an insurer of any other individual or legal entity, or (ii) any money payable to Undersigned as a return of unearned or other premiums, or (iii) any money payable to settle any claim of the Undersigned against Surety or any individual or other legal entity insured or bonded by Surety.

## ARTICLE XIV - <u>SECURITY AGREEMENT</u>

This Agreement shall constitute both a Security Agreement and a Financing Statement for the benefit of Surety in accordance with the provisions of the UCC or similar statute and may so be used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. A carbon, photographic or other reproduction of this Agreement at the option of Surety may be filed as a Financing Statement. The failure to do so shall not release or impair any of the obligations of the Indemnitors under this Agreement nor diminish any other legal or equitable rights of the Surety.

## ARTICLE XV - <u>ATTORNEY-IN-FACT</u>

The Undersigned hereby jointly and severally irrevocably nominate, constitute, appoint and designate Surety as their Attorney-in-Fact with the right and authority, but not the obligation, to exercise all of the rights of the Undersigned or any one of them assigned, transferred and set over to Surety in this Agreement, and in the name of the Undersigned to make, execute, and deliver all instruments necessary to perfect, preserve and protect the security interest or to vest in Surety absolute title, and any rights, to the Collateral, and to secure to the Surety any other rights, benefits and privileges granted to Surety hereby and all assignments, documents, checks, drafts, or other instruments made or issued in payment of any obligations to which Surety has the right to receipt of payment pursuant to this Agreement, as deemed necessary and proper by Surety. The Undersigned hereby ratify and confirm all acts and actions taken and done by Surety as such Attorney-in-Fact and agree to protect and hold harmless the Surety for acts herein granted as Attorney-in-Fact.

## ARTICLE XVI - <u>MATERIAL INTEREST IN OBTAINING BONDS</u>

Whereas, the Indemnitors have a substantial material and beneficial interest in the obtaining of said Bonds on behalf of various related companies, it is, therefore, agreed that this Agreement shall apply to any Bonds executed on behalf of any subsidiary, subsidiary of a subsidiary whether direct or indirect, affiliated company or partnership, joint venture or corporation of any Indemnitor, now existing or hereafter formed or acquired, and whether partially or wholly owned or controlled, as fully as if the names and signatures of such subsidiaries or affiliates appeared herein as Indemnitors.

## ARTICLE XVII - <u>WAIVER AND MODIFICATION</u>

**17.01 Modification To Be In Writing** . This Agreement is signed by Undersigned as a final, complete and exclusive expression of the terms hereof, and supersedes all verbal agreements and understandings of the parties with respect hereto their obligations and duties to Surety. No agreement, modification, amendment, understanding or course of dealing between the parties hereto shall be effective to change, waive, terminate, modify, discharge or release in whole or in part any provision of this Agreement or any rights and remedies afforded to Surety, unless set forth in writing signed by an authorized Attorney-in-Fact or an authorized officer of Surety. Any provision hereof may only be waived in writing by the party entitled to the benefit of such provision. No waiver of the breach of any provision shall be deemed or construed to be a waiver of any other breach.

**17.02 Irregularities Waived** . The Indemnitors waive any defense that this instrument was executed subsequent to the date of any such Bond, admitting and covenanting that such Bond was executed pursuant to the Indemnitors' request and in reliance on the Indemnitors' promise to execute this instrument. The Surety shall have the right to fill in any blanks and to correct any errors in filling in any blanks pertaining to the execution of this Agreement. Wherever used in this instrument the plural term shall include the singular and the singular shall include the plural, as the circumstances require. This Agreement shall apply to any and all Bonds executed, or the execution of which has been procured, by Surety for any of the Undersigned, whether or not there shall be any written application therefore executed by one or more of the Undersigned.

**17.03 Partial Invalidity or Execution.** If any of the Undersigned fail to execute or improperly execute this Agreement, such failure shall not affect the obligations of the Undersigned. The failure to sign or the improper execution of a Bond shall not affect the Surety's rights under this Agreement; nor by claim that other indemnity or security was to have been obtained; nor by the release of any indemnity or Indemnitor; nor the return of any Collateral that may have been obtained; and if any party signing this instrument is not bound for any reason, this obligation shall be binding on each and every other party to the Agreement. In the event any part of this Indemnity Agreement shall be void under the law of the place governing the construction hereof, then such part only shall be considered as deleted and the remainder of this Agreement shall endure in full force and effect.

## ARTICLE XVIII - <u>TERMINATION</u>

This is a continuing Agreement, which remains in full force and effect until terminated. This Agreement may be terminated by any one or more of the Undersigned by giving written notice stating their intent and sent by certified or registered mail to Surety ("Termination Notice"). Any such Termination Notice shall become effective thirty (30) days from the date received by Surety but shall not affect any liabilities, obligations, or duties of the Undersigned to Surety pursuant to the terms and conditions of this Agreement, or arising pursuant to operation of law, in relation to any Bonds in existence or that Surety becomes obligated to issue prior to the effective date of termination. The termination of one party's obligations under this Agreement shall in no way affect the obligations of the remaining parties whose obligations have not been terminated.

## ARTICLE XIX - <u>NOTICE OF CLAIMS OR CONDITIONS</u>

If the Undersigned becomes aware of any demand, notice, proceeding, event or conditions which may result in liability to the Surety under any Bond, the Undersigned shall promptly notify Surety.

## ARTICLE XX - <u>GENERAL PROVISIONS</u>

<u>20.01 Premiums</u>. The Undersigned shall pay to Surety all premiums and charges of Surety arising in connection with the issuance of Bonds, when due, until all obligations, duties, debts and liabilities of the Undersigned to Surety pursuant to this Agreement and pursuant to such Bonds, and otherwise at law or in equity, shall have been performed and satisfied in full and Surety shall have been released in full from all obligations under such Bonds.

<u>20.02 Notices</u>. All notices and other communications hereunder by Surety to Undersigned shall be in writing and shall be either personally delivered or sent by United States registered or certified mail, postage prepaid, return receipt requested, or Federal Express or other courier service, and shall be deemed given upon the earlier of delivery in person, against a written receipt, or three (3) business days after having been sent in accordance with the foregoing, addressed to the parties at the address set forth below, or to such other address as any party may provide.

<u>20.03 Governing Law</u>. This Agreement its construction, validity, performance and all rights, obligations and liabilities arising hereunder shall be governed, construed and enforced in accordance with the laws of the State of New York, exclusive of conflicts of law principles. This Agreement shall be liberally construed so as to protect, exonerate and indemnify the Surety.

<u>20.04 Section Headings</u> . Section headings are for reference only and shall not in any way affect the meaning and interpretation of any provision in this Agreement.

<u>20.05 Electronic Images.</u> For purposes of enforcing this Agreement, an authenticated true copy or facsimile copy hereof shall be treated as an original.

## ARTICLE XXI - <u>SPECIAL PROVISIONS</u>

None

[Remainder of Page Intentionally Left Blank]

## Corporate Execution

**THE UNDERSIGNED HAVING CAREFULLY READ THIS AGREEMENT AND UNDERSTANDING ALL RIGHTS AND RESPONSIBILITIES SET FORTH IN THIS AGREEMENT; HAS HAD THE OPPORTUNITY TO CONSULT COUNSEL TO THE EXTENT DEEMED APPROPRIATE. THERE ARE NO SEPARATE AGREEMENTS OF UNDERSTANDINGS, WHICH IN ANY WAY LESSEN ANY OBLIGATIONS SET FORTH ABOVE AND HEREBY AGREES THE TERMS AND PROVISIONS ARE REASONABLE AND APPROPRIATE BASED UPON THE RELATIONSHIP ESTABLISHED PURSUANT TO THIS AGREEMENT. IN TESTIMONY HEREOF, THE UNDERSIGNED HAS HEREUNTO SET HIS OR HER HAND AND/OR FIXED THE COMPANY SEAL.**

**Resolution:** The Undersigned has a substantial, material and beneficial interest (a) in the issuance, renewal, continuation, extension or substitution of Bonds procured on behalf of any of the signatories to this Agreement; and (b) the performance of Contracts and fulfillment of obligations generally for which any of the said signatories has applied or will apply to Surety for Bonds pursuant to this Agreement. The Undersigned have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. The Undersigned further acknowledge and agree that (a) the execution, delivery, and performance of this Agreement, (b) the compliance with the terms and provisions hereof, and (c) the fulfillment of the obligations contemplated herein, do not conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Undersigned, or any other agreement binding upon the Undersigned. A violation, breach failure or noncompliance of the foregoing constitute a Default hereunder.

Each person signing on behalf of a corporation, limited liability company, partnership or trust or other distinct legal entity that is not a natural person affirms that he or she is duly authorized to bind the entity to the terms and conditions of this Agreement, and further affirms that he or she is fully familiar with the by-law, resolutions, trust agreements, articles of organization, or other documents, that bear on the power and authority of such entity, including, without limitation, the power and authority of officeholders required to bind the entity to this Agreement.

ATTEST OR WITNESS

| | |
|---|---|
| | Marx Sheet Metal & Mechanical, Inc., A Pennsylvania Corporation |
| | Name of Company          FEIN: ████ |
| | 373 High Blvd., PO Box 890 |
| | Company Street Address |
| | Wilkes Barre, PA 18703-0890 |
| | City State Zip |

X _Colette Heffron_          X _Joseph Marx_

_Colette Heffron, Controller_          Joseph Marx, President Please sign above

Print or type Name and Title          Print or type Name and Title

Signed this _18_ Day of _August_, 20_17_

## CORPORATE ACKNOWLEDGMENT

STATE OF _PA_          }
                       } SS.:
COUNTY OF _LUZERNE_    }

On this _18_ day of _Aug_ in the year _2017_ before me personally come(s) _Joe Marx_, to me known, who, being by me duly sworn, deposes and says that same resides in _Hanover Twp_, that same is the _President_ of _MSM Inc_ the corporation described in and which executed the foregoing instrument; that same knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that same signed the name thereto by like order.

_Rochelle Shubilla_

(Signature of Notary taking acknowledgment) (Seal)

**Commonwealth of Pennsylvania**

```
NOTARIAL SEAL
Rochelle Shubilla, Notary Public
City of Wilkes-Barre, Luzerne County
My Commission Expires February 12, 2019
```

**[Remainder of Page Intentionally Left Blank]**

## Corporate Execution

**THE UNDERSIGNED HAVING CAREFULLY READ THIS AGREEMENT AND UNDERSTANDING ALL RIGHTS AND RESPONSIBILITIES SET FORTH IN THIS AGREEMENT; HAS HAD THE OPPORTUNITY TO CONSULT COUNSEL TO THE EXTENT DEEMED APPROPRIATE. THERE ARE NO SEPARATE AGREEMENTS OF UNDERSTANDINGS, WHICH IN ANY WAY LESSEN ANY OBLIGATIONS SET FORTH ABOVE AND HEREBY AGREES THE TERMS AND PROVISIONS ARE REASONABLE AND APPROPRIATE BASED UPON THE RELATIONSHIP ESTABLISHED PURSUANT TO THIS AGREEMENT. IN TESTIMONY HEREOF, THE UNDERSIGNED HAS HEREUNTO SET HIS OR HER HAND AND/OR FIXED THE COMPANY SEAL.**

**Resolution:** The Undersigned has a substantial, material and beneficial interest (a) in the issuance, renewal, continuation, extension or substitution of Bonds procured on behalf of any of the signatories to this Agreement; and (b) the performance of Contracts and fulfillment of obligations generally for which any of the said signatories has applied or will apply to Surety for Bonds pursuant to this Agreement. The Undersigned have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. The Undersigned further acknowledge and agree that (a) the execution, delivery, and performance of this Agreement, (b) the compliance with the terms and provisions hereof, and (c) the fulfillment of the obligations contemplated herein, do not conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Undersigned, or any other agreement binding upon the Undersigned. A violation, breach failure or noncompliance of the foregoing constitute a Default hereunder.

Each person signing on behalf of a corporation, limited liability company, partnership or trust or other distinct legal entity that is not a natural person affirms that he or she is duly authorized to bind the entity named to the terms and conditions of this Agreement, and further affirms that he or she is fully familiar with the by-law, resolutions, trust agreements, articles of organization, or other documents, that bear on the power and authority of such entity, including, without limitation, the power and authority of officeholders required to bind the entity to this Agreement.

ATTEST OR WITNESS

Marx Sheet Metal & Mechanical, Inc. a Pennsylvania Corporation

Name of Company          FEIN: ███████

373 High Blvd., PO Box 890

Company Street Address

Wilkes Barre, PA 18703-0890

City State Zip

X _Colette Heffron_          X _Thomas J Marx Sr._

_Colette HEFFRon   Controller_          Thomas Marx, Vice President Please sign above

Print or type Name and Title          Print or type Name and Title

Signed this _18_ Day of _Augost_, 20_17_

## CORPORATE ACKNOWLEDGMENT

STATE OF _PA_          }
                       } SS.: _____
COUNTY OF _LUZERNE_    }

On this _18_ day of _Aug_ in the year _2017_ before me personally come(s) _Thomas Marx Sr_, to me known, who, being by me duly sworn, deposes and says that same resides in _PLAINS, PA_, that same is the _VP_, of _MSM Inc_ the corporation described in and which executed the foregoing instrument; that same knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that same signed the name thereto by like order.

_Rochelle Shubilla_

(Signature of Notary taking acknowledgment) (Seal)

Commonwealth of Pennsylvania

NOTARIAL SEAL    **[Remainder of Page Intentionally Left Blank]**
Rochelle Shubilla, Notary Public
City of Wilkes-Barre, Luzerne County
My Commission Expires February 12, 2019

Contract GAI Ed. 03/15 Page 8 of 15

## Corporate Execution

**THE UNDERSIGNED HAVING CAREFULLY READ THIS AGREEMENT AND UNDERSTANDING ALL RIGHTS AND RESPONSIBILITIES SET FORTH IN THIS AGREEMENT; HAS HAD THE OPPORTUNITY TO CONSULT COUNSEL TO THE EXTENT DEEMED APPROPRIATE. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS, WHICH IN ANY WAY LESSEN ANY OBLIGATIONS SET FORTH ABOVE AND HEREBY AGREES THE TERMS AND PROVISIONS ARE REASONABLE AND APPROPRIATE BASED UPON THE RELATIONSHIP ESTABLISHED PURSUANT TO THIS AGREEMENT. IN TESTIMONY HEREOF, THE UNDERSIGNED HAS HEREUNTO SET HIS OR HER HAND AND/OR FIXED THE COMPANY SEAL.**

**Resolution:** The Undersigned has a substantial, material and beneficial interest (a) in the issuance, renewal, continuation, extension or substitution of Bonds procured on behalf of any of the signatories to this Agreement; and (b) the performance of Contracts and fulfillment of obligations generally for which any of the said signatories has applied or will apply to Surety for Bonds pursuant to this Agreement. The Undersigned have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. The Undersigned further acknowledge and agree that (a) the execution, delivery, and performance of this Agreement, (b) the compliance with the terms and provisions hereof, and (c) the fulfillment of the obligations contemplated herein, do not conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Undersigned, or any other agreement binding upon the Undersigned. A violation, breach failure or noncompliance of the foregoing constitute a Default hereunder.

Each person signing on behalf of a corporation, limited liability company, partnership or trust or other distinct legal entity that is not a natural person affirms that he or she is duly authorized to bind the entity named to the terms and conditions of this Agreement, and further affirms that he or she is fully familiar with the by-law, resolutions, trust agreements, articles of organization, or other documents, that bear on the power and authority of such entity, including, without limitation, the power and authority of officeholders required to bind the entity to this Agreement.

| ATTEST OR WITNESS | Marx Sheet Metal & Mechanical, Inc., a Pennsylvania Corporation |
|---|---|
| | Name of Company          FEIN: ███████ |
| | 373 High Blvd., PO Box 890 |
| | Company Street Address |
| | Wilkes Barre, PA 18703-0890 |
| | City State Zip |
| X _Colette Heffron_ | X _Donald Marx Sr._ |
| _Colette Heffron, Coworker_ | Donald Marx Sr., CEO Please sign above |
| Print or type Name and Title | Print or type Name and Title |
| | Signed this _18_ Day of _August_, 20_17_ |

## CORPORATE ACKNOWLEDGMENT

STATE OF ___PA___        }
                         } SS.:
COUNTY OF ___LUZERNE___  }

On this _18_ day of _Aug_ in the year _2017_ before me personally come(s) _Donald Marx Sr_, to me known, who, being by me duly sworn, deposes and says that same resides in _Harvey's Lake, PA_, that same is the _CEO_, of _MSM Inc_ the corporation described in and which executed the foregoing instrument; that same knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that same signed the name thereto by like order.

_Rochelle Shubilla_

(Signature of Notary taking acknowledgment) (Seal)

Commonwealth of Pennsylvania

NOTARIAL SEAL        **[Remainder of Page Intentionally Left Blank]**
Rochelle Shubilla, Notary Public
City of Wilkes-Barre, Luzerne County
My Commission Expires February 12, 2019

## Limited Liability Company Execution

**THE UNDERSIGNED HAVING CAREFULLY READ THIS AGREEMENT AND UNDERSTANDING ALL RIGHTS AND RESPONSIBILITIES SET FORTH IN THIS AGREEMENT; HAS HAD THE OPPORTUNITY TO CONSULT COUNSEL TO THE EXTENT DEEMED APPROPRIATE. THERE ARE NO SEPARATE AGREEMENTS OF UNDERSTANDINGS, WHICH IN ANY WAY LESSEN ANY OBLIGATIONS SET FORTH ABOVE AND HEREBY AGREES THE TERMS AND PROVISIONS ARE REASONABLE AND APPROPRIATE BASED UPON THE RELATIONSHIP ESTABLISHED PURSUANT TO THIS AGREEMENT. IN TESTIMONY HEREOF, THE UNDERSIGNED HAS HEREUNTO SET HIS OR HER HAND AND/OR FIXED THE COMPANY SEAL.**

**Resolution:** The Undersigned has a substantial, material and beneficial interest (a) in the issuance, renewal, continuation, extension or substitution of Bonds procured on behalf of any of the signatories to this Agreement; and (b) the performance of Contracts and fulfillment of obligations generally for which any of the said signatories has applied or will apply to Surety for Bonds pursuant to this Agreement. The Undersigned have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. The Undersigned further acknowledge and agree that (a) the execution, delivery, and performance of this Agreement, (b) the compliance with the terms and provisions hereof, and (c) the fulfillment of the obligations contemplated herein, do not conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Undersigned, or any other agreement binding upon the Undersigned. A violation, breach failure or noncompliance of the foregoing constitute a Default hereunder.

Each person signing on behalf of a corporation, limited liability company, partnership or trust or other distinct legal entity that is not a natural person affirms that he or she is duly authorized to bind the entity named to the terms and conditions of this Agreement, and further affirms that he or she is fully familiar with the by-law, resolutions, trust agreements, articles of organization, or other documents, that bear on the power and authority of such entity, including, without limitation, the power and authority of officeholders required to bind the entity to this Agreement.

ATTEST OR WITNESS

Marx NJ Group, LLC
Name of Company                          FEIN: ▮▮▮▮▮▮▮

343 High Blvd., PO Box 890
Company Street Address

Wilkes Barre, PA  18703-0890
City State Zip

X _Colette Huffron_          X _Joe Marx_
_Colette Heffron   Controller_
Print or type Name and Title          Joseph Marx, Member Please sign above

Print or type Name and Title
Signed this _18_ Day of _August_ , 20 _17_

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _PA_                    }
                                 }  SS.: _____
COUNTY OF _LUZERNE_              }

On this _18_ day of _Aug_ in the year _2017_ before me personally come(s) _Joe Marx_ , to me known, who, being by me duly sworn, deposes and says that same resides in _Hanover Twp_ , that same is the _Pres_ of the _MSM Inc_ , the Limited Liability Company described in and which executed the foregoing instrument; that same is authorized under the Articles of Organization and the Operating Agreement as amended and in effect this date to execute the foregoing instrument and so bind the Limited Liability Company.

_Rochelle Shubilla_
(Signature of Notary taking acknowledgment) (Seal)

Commonwealth of Pennsylvania

NOTARIAL SEAL
Rochelle Shubilla, Notary Public
City of Wilkes-Barre, Luzerne County
My Commission Expires February 12, 2019

[Remainder of Page Intentionally Left Blank]

## Limited Liability Company Execution

**THE UNDERSIGNED HAVING CAREFULLY READ THIS AGREEMENT AND UNDERSTANDING ALL RIGHTS AND RESPONSIBILITIES SET FORTH IN THIS AGREEMENT; HAS HAD THE OPPORTUNITY TO CONSULT COUNSEL TO THE EXTENT DEEMED APPROPRIATE. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS, WHICH IN ANY WAY LESSEN ANY OBLIGATIONS SET FORTH ABOVE AND HEREBY AGREES THE TERMS AND PROVISIONS ARE REASONABLE AND APPROPRIATE BASED UPON THE RELATIONSHIP ESTABLISHED PURSUANT TO THIS AGREEMENT. IN TESTIMONY HEREOF, THE UNDERSIGNED HAS HEREUNTO SET HIS OR HER HAND AND/OR FIXED THE COMPANY SEAL.**

**Resolution:** The Undersigned has a substantial, material and beneficial interest (a) in the issuance, renewal, continuation, extension or substitution of Bonds procured on behalf of any of the signatories to this Agreement; and (b) the performance of Contracts and fulfillment of obligations generally for which any of the said signatories has applied or will apply to Surety for Bonds pursuant to this Agreement. The Undersigned have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. The Undersigned further acknowledge and agree that (a) the execution, delivery, and performance of this Agreement, (b) the compliance with the terms and provisions hereof, and (c) the fulfillment of the obligations contemplated herein, do not conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Undersigned, or any other agreement binding upon the Undersigned. A violation, breach failure or noncompliance of the foregoing constitute a Default hereunder.

Each person signing on behalf of a corporation, limited liability company, partnership or trust or other distinct legal entity that is not a natural person affirms that he or she is duly authorized to bind the entity named to the terms and conditions of this Agreement, and further affirms that he or she is fully familiar with the by-law, resolutions, trust agreements, articles of organization, or other documents, that bear on the power and authority of such entity, including, without limitation, the power and authority of officeholders required to bind the entity to this Agreement.

ATTEST OR WITNESS

Marx NJ Group, LLC
_____
Name of Company                    FEIN: ███████████

373 High Blvd., PO Box 890
_____
Company Street Address

Wilkes Barre, PA 18703-0890
_____
City State Zip

X _____

Colette Hefford Controller
_____
Print or type Name and Title

X _Donald Marx Sr._

Donald Marx Sr., Member Please sign above
_____
Print or type Name and Title

Signed this _18_ Day of _AUGUST_, 20_17_

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _PA_            }
                         } SS.:
COUNTY OF _LUZERNE_      }

On this _18_ day of _AUG_ in the year _2017_ before me personally come(s) _Donald Marx Sr_, to me known, who, being by me duly sworn, deposes and says that same resides in _Harveys Lake_, that same is the _CEO_ of the _MSM Inc._, the Limited Liability Company described in and which executed the foregoing instrument; that same is authorized under the Articles of Organization and the Operating Agreement as amended and in effect this date to execute the foregoing instrument and so bind the Limited Liability Company.

_____
(Signature of Notary taking acknowledgment) (Seal)

Commonwealth of Pennsylvania

**[Remainder of Page Intentionally Left Blank]**

NOTARIAL SEAL
Rochelle Shubilla, Notary Public
City of Wilkes-Barre, Luzerne County
My Commission Expires February 12, 2019

## Limited Liability Company Execution

**THE UNDERSIGNED HAVING CAREFULLY READ THIS AGREEMENT AND UNDERSTANDING ALL RIGHTS AND RESPONSIBILITIES SET FORTH IN THIS AGREEMENT; HAS HAD THE OPPORTUNITY TO CONSULT COUNSEL TO THE EXTENT DEEMED APPROPRIATE. THERE ARE NO SEPARATE AGREEMENTS OF UNDERSTANDINGS, WHICH IN ANY WAY LESSEN ANY OBLIGATIONS SET FORTH ABOVE AND HEREBY AGREES THE TERMS AND PROVISIONS ARE REASONABLE AND APPROPRIATE BASED UPON THE RELATIONSHIP ESTABLISHED PURSUANT TO THIS AGREEMENT. IN TESTIMONY HEREOF, THE UNDERSIGNED HAS HEREUNTO SET HIS OR HER HAND AND/OR FIXED THE COMPANY SEAL.**

**Resolution:** The Undersigned has a substantial, material and beneficial interest (a) in the issuance, renewal, continuation, extension or substitution of Bonds procured on behalf of any of the signatories to this Agreement; and (b) the performance of Contracts and fulfillment of obligations generally for which any of the said signatories has applied or will apply to Surety for Bonds pursuant to this Agreement. The Undersigned have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. The Undersigned further acknowledge and agree that (a) the execution, delivery, and performance of this Agreement, (b) the compliance with the terms and provisions hereof, and (c) the fulfillment of the obligations contemplated herein, do not conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Undersigned, or any other agreement binding upon the Undersigned. A violation, breach failure or noncompliance of the foregoing constitute a Default hereunder.

Each person signing on behalf of a corporation, limited liability company, partnership or trust or other distinct legal entity that is not a natural person affirms that he or she is duly authorized to bind the entity named to the terms and conditions of this Agreement, and further affirms that he or she is fully familiar with the by-law, resolutions, trust agreements, articles of organization, or other documents, that bear on the power and authority of such entity, including, without limitation, the power and authority of officeholders required to bind the entity to this Agreement.

| ATTEST OR WITNESS | |
|---|---|
| | Marx NJ Group, LLC |
| | Name of Company                    FEIN: ████████ |
| | 373 High Blvd., PO Box 890 |
| | Company Street Address |
| | Wilkes Barre, PA  18703-0890 |
| | City State Zip |
| X _Colette Hoffrow_ | X _Thomas J Marx Sr_ |
| _Colette Hoffron Controller_ | Thomas Marx Sr., Member Please sign above |
| Print or type Name and Title | Print or type Name and Title |
| | Signed this _18_ Day of _August_, 20 _17_ |

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _PA_                    }
                                 } SS.: _____
COUNTY OF _LUZERNE_              }

On this _18_ day of _AUG_ in the year _2017_ before me personally come(s) _Thomas Marx Sr_, to me known, who, being by me duly sworn, deposes and says that same resides in _PLAINS_, that same is the _VP_ of the _MSM Inc_, the Limited Liability Company described in and which executed the foregoing instrument; that same is authorized under the Articles of Organization and the Operating Agreement as amended and in effect this date to execute the foregoing instrument and so bind the Limited Liability Company.

_Rochelle Shubilla_

(Signature of Notary taking acknowledgment) (Seal)

Commonwealth of Pennsylvania

> NOTARIAL SEAL          [Remainder of Page Intentionally Left Blank]
> Rochelle Shubilla, Notary Public
> City of Wilkes-Barre, Luzerne County
> My Commission Expires February 12, 2019

## Individual Execution

THE UNDERSIGNED HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTAND HIS/HER RIGHTS AND RESPONSIBILITIES; THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO CONSULT COUNSEL TO THE EXTENT DEEMED APPROPRIATE. THERE ARE NO SEPARATE AGREEMENTS OF UNDERSTANDINGS, WHICH IN ANY WAY LESSEN ANY OBLIGATIONS SET FORTH ABOVE AND THE UNDERSIGNED HEREBY AGREES THE TERMS AND PROVISIONS ARE REASONABLE AND APPROPRIATE BASED UPON THE RELATIONSHIP ESTABLISHED HEREUNDER. IN TESTIMONY HEREOF, THE UNDERSIGNED HAS HEREUNTO SET HIS/HER HAND.

ATTEST OR WITNESS

Donald Marx Sr.

Name                              SSN: ███████

1979 Lakeside Drive

Street Address

Harveys Lake, PA 18618

City State Zip

X _Colette Heffron_           X _Donald Marx Sr._

_Colette Heffron_                Donald Marx Sr., Personally Please sign above

Print or type Name

Print or type Name

Signed this _18_ Day of _August_, 20_17_

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___PA___            }
                             } SS.: _____
COUNTY OF ___LUZERNE___      }

On this _16_ day of _AUG_ in the year _2017_ before me personally come(s) _Donald Marx Sr._ to me known and known to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that he/she executed the same as his/her free act and deed.

_Rochelle Shubilla_

(Signature of Notary taking acknowledgment) (Seal)

Commonwealth of Pennsylvania
NOTARIAL SEAL
Rochelle Shubilla, Notary Public
City of Wilkes-Barre, Luzerne County
My Commission Expires February 12, 2019 [Remainder of Page Intentionally Left Blank]

## Individual Execution

THE UNDERSIGNED HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTAND HIS/HER RIGHTS AND RESPONSIBILITIES; THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO CONSULT COUNSEL TO THE EXTENT DEEMED APPROPRIATE. THERE ARE NO SEPARATE AGREEMENTS OF UNDERSTANDINGS, WHICH IN ANY WAY LESSEN ANY OBLIGATIONS SET FORTH ABOVE AND THE UNDERSIGNED HEREBY AGREES THE TERMS AND PROVISIONS ARE REASONABLE AND APPROPRIATE BASED UPON THE RELATIONSHIP ESTABLISHED HEREUNDER. IN TESTIMONY HEREOF, THE UNDERSIGNED HAS HEREUNTO SET HIS/HER HAND.

ATTEST OR WITNESS

Joseph Marx
Name                                          SSN: ████████

24 Clifton Court
Street Address

Hanover Twp, PA 18706
City State Zip

X _Colette Heffron_
Print or type Name

X _Joseph Marx_
Joseph Marx, Personally Please sign above
Print or type Name
Signed this _18_ Day of _AUGUST_, 20_17_

ATTEST OR WITNESS

Angela Marx
Name                                          SSN: ████████

24 Clifton Court
Street Address

Hanover Twp, PA 18706
City State Zip

X _Colette Heffron_
Print or type Name

X _Angela Marx_
Angela Marx, Personally Please sign above
Print or type Name
Signed this _18_ Day of _August_, 20_17_

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _PA_ }
} SS.: _____
COUNTY OF _LUZERNE_ }
On this _18_ day of _AUG_ in the year _2017_ before me personally come(s) _Joe Marx_, to me known and known to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that he/she executed the same as his/her free act and deed.

_____
(Signature of Notary taking acknowledgment) (Seal)

Commonwealth of Pennsylvania
NOTARIAL SEAL
Rochelle Shubila, Notary Public
City of Wilkes-Barre, Luzerne County
My Commission Expires February 12, 2019

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _PA_ }
} SS.: _____
COUNTY OF _LUZERNE_ }
On this _18_ day of _AUG_ in the year _2017_ before me personally come(s) _Angela Marx_, to me known and known to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that he/she executed the same as his/her free act and deed.

_____
(Signature of Notary taking acknowledgment) (Seal)

Commonwealth of Pennsylvania
NOTARIAL SEAL
Rochelle Shubila, Notary Public
City of Wilkes-Barre, Luzerne County
My Commission Expires February 12, 2019

## Individual Execution

**THE UNDERSIGNED HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTAND HIS/HER RIGHTS AND RESPONSIBILITIES; THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO CONSULT COUNSEL TO THE EXTENT DEEMED APPROPRIATE. THERE ARE NO SEPARATE AGREEMENTS OF UNDERSTANDINGS, WHICH IN ANY WAY LESSEN ANY OBLIGATIONS SET FORTH ABOVE AND THE UNDERSIGNED HEREBY AGREES THE TERMS AND PROVISIONS ARE REASONABLE AND APPROPRIATE BASED UPON THE RELATIONSHIP ESTABLISHED HEREUNDER. IN TESTIMONY HEREOF, THE UNDERSIGNED HAS HEREUNTO SET HIS/HER HAND.**

ATTEST OR WITNESS

Thomas Marx Sr.
Name                                    SSN: ███████████

14 Birch Street
Street Address
Plains, PA 18705
City State Zip

X _Colette Heffron_                     X _Thomas J. Marx Sr._
_Colette HEFFRON_                       Thomas Marx Sr., Personally Please sign above
Print or type Name                      Print or type Name
                                        Signed this _18_ Day of _August_, 20 _17_

ATTEST OR WITNESS                       Nancy Marx
                                        Name                                    SSN: ███████████

                                        14 Birch Street
                                        Street Address
                                        Plains, PA 18705
                                        City State Zip

X _Colette Heffron_                     X _Nancy Marx_
_Colette HEFFRON_                       Nancy Marx, Personally Please sign above
Print or type Name                      Print or type Name
                                        Signed this _18_ Day of _August_, 20 _17_

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _PA_                     }
                                 }  SS.: _____
COUNTY OF _LUZERNE_              }
On this _18_ day of _AUG_ in the year _2017_ before me personally come(s) _Thomas Marx Sr._, to me known and known to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that he/she executed the same as his/her free act and deed.

_Rochelle Shubilla_
(Signature of Notary taking acknowledgment) (Seal)

> Commonwealth of Pennsylvania
> NOTARIAL SEAL
> Rochelle Shubilla, Notary Public
> City of Wilkes-Barre, Luzerne County
> My Commission Expires February 12, 2019

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _PA_                     }
                                 }  SS.: _____
COUNTY OF _LUZERNE_              }
On this _18_ day of _AUG_ in the year _2017_ before me personally come(s) _Nancy Marx_, to me known and known to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that he/she executed the same as his/her free act and deed.

_Rochelle Shubilla_
(Signature of Notary taking acknowledgment) (Seal)

> Commonwealth of Pennsylvania
> NOTARIAL SEAL
> Rochelle Shubilla, Notary Public
> City of Wilkes-Barre, Luzerne County
> My Commission Expires February 12, 2019