IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BERKLEY INSURANCE COMPANY,** | : | CIV NO. 3:23-CV-615 |
| Plaintiff, | : | (Judge Munley) |
| v. | : | (Magistrate Judge Carlson) |
| **MARX SHEET METAL & MECHANICAL, INC., et al.,** | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATION[1]

## I.  Factual Background

We are now called upon to write the first draft of one of the final chapters in this litigation and address a motion for entry and liquidation of a default judgments against several defendants in this lawsuit, following those defendants' failures to respond to this complaint in a meaningful fashion or otherwise litigate this case.

---

[1] We are addressing this motion through a Report and Recommendation because we are mindful that, absent the consent of all parties, a magistrate judge may only issue a recommendation that a default judgment be entered. See Banco Popular de Puerto Rico v. Bloice, No. CV 2007-75, 2014 WL 12744794, at *1–2 (D.V.I. Aug. 5, 2014); Abraham v. Stine, 2007 WL 3124714 at *2 (D.V.I. Sept. 27, 2007) (vacating default judgment ordered by magistrate judge) (citing Callier v. Gray, 167 F.3d 977, 981 (3d Cir. 1999)).

By way of background, this is a lawsuit brought by Berkley Insurance Company, a surety, seeking to be indemnified for payments it made on a surety bond issued to the defendants. (Doc. 1). Berkley's complaint, which was filed on April 12, 2023, named six defendants: Marx Sheet Metal and Mechanical, Inc., Marx NJ Group, LLC, Joseph Marx, Angela Marx, Thomas Marx, Sr., and Nancy Marx. (Id.) In this complaint, Berkley alleged that it issued payment and performance bonds on behalf of Defendants Marx Sheet Metal & Mechanical, Inc. and Marx NJ Group, LLC. Pursuant to its obligations under its surety bonds, Berkley was required to make certain payments to contractors and suppliers, among others, and as a result of significant losses suffered by these third parties. Moreover, under the terms of this surety agreement, a number of defendants were contractually obligated to indemnify and repay Berkley for those losses which it paid. According to the plaintiff, as of August 20, 2024, Berkley has suffered net losses totaling $15,503,494.65 under its bonds, excluding attorneys' and consultants' fees.

The docket affirmatively reveals that all of the defendants acknowledged service of the complaint in May of 2023, and therefore were obliged to respond to the complaint by June or July of 2023. (Docs. 12-17). In fact, only Marx Sheet Metal and Mechanical, Inc., has responded by filing a suggestion of bankruptcy on behalf of this corporate defendant. (Doc. 21). As a result, this litigation has been stayed

with respect to Marx Sheet Metal and Mechanical, Inc., but the case has proceeded against the remaining named defendants.

None of these remaining defendants have answered or otherwise responded to the complaint, and more than one year has passed since they acknowledged service of the complaint upon them. Given this inaction, in January of 2024, Berkley requested that the clerk enter defaults against Marx NJ Group, LLC, Joseph Marx, and Angela Marx. (Doc. 28). On January 19, 2024, the clerk entered a default against these defendants. (Doc. 29). Another eight months elapsed before Berkley filed the instant motion on August 27, 2024, for entry and liquidation of default judgments against three defaulting defendants, Marx NJ Group, LLC, Joseph Marx, and Angela Marx. (Docs. 36 and 37). That motion, brief, and accompanying exhibits identified the parties' longstanding defaults, explained their contractual obligations to indemnify Berkley, and provided an itemized breakdown of the payments by the plaintiff on the surety bond which are now subject to indemnification. (Id.) These pleadings were served upon the defaulting defendants, placing them on notice of Berkley's claims and affording them an opportunity to contest those claims. (Id.) However, Marx NJ Group, LLC, Joseph Marx, and Angela Marx have forfeited this opportunity through their continued inaction and failure to respond to this lawsuit and motion for entry and liquidation of default. Accordingly, the motion is now ripe for resolution.

For the reasons set forth below, it is recommended that the motion be granted.

## II. <u>Discussion</u>

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. Under Rule 55 a default judgment may only be entered when the party against whom the default judgment is sought was served and "has failed to plead or otherwise respond." Rule 55(a), F.R.Civ.P. Furthermore, in ruling upon requests relating to default judgments it is well-settled that these decisions are:

> [L]eft primarily to the discretion of the district court. <u>Tozer v. Charles A. Krause Milling Co.</u>, 189 F.2d 242, 244 (3d Cir. 1951). We recognize, however, that this court does not favor entry of defaults or default judgments. We require doubtful cases to be resolved in favor of the party moving to [deny or] set aside the default judgment "so that cases may be decided on their merits." <u>Id</u>. at 245. See also <u>Gross v. Stereo Component Systems, Inc.</u>, 700 F.2d 120, 122 (3d Cir. 1983); <u>Feliciano v. Reliant Tooling Company, Ltd.</u>, 691 F.2d 653, 656 (3d Cir. 1982); <u>Farnese v. Bagnasco</u>, 687 F.2d 761, 764 (3d Cir. 1982). Nevertheless, we do not [deny or] set aside the entry of default and default judgment unless we determine that the district court abused its discretion. We require the district court to consider the following factors in exercising its discretion ...: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct. <u>Gross v. Stereo Component Systems, Inc.</u>, 700 F.2d at 122; <u>Feliciano v. Reliant Tooling Company, Ltd.</u>, 691 F.2d at 656; <u>Farnese v. Bagnasco</u>, 687 F.2d at 764.

<u>United States v. $55,518.05 in U.S. Currency</u>, 728 F.2d 192, 194-95 (3d Cir. 1984).

In this case, entry of default judgment against these unresponsive defendants is now appropriate. These unresponsive defendants were timely served more than a

year ago but have not yet responded to this complaint. Therefore, we recommend that the motion for entry of default judgment be granted.

We further note that Berkley's motion for entry of default also placed the defaulting defendants on notice that the plaintiff would seek to liquidate this default judgment against them and afforded the defendants the opportunity to contest the amount of any default judgment. Despite being afforded this opportunity, the defendants have defaulted yet again, failing to respond to the motion, and the time for response has now passed. Given these facts, we recognize that:

> "When a plaintiff prevails by default, he or she is not automatically entitled to the damages they originally demanded. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990). Rather, defaults are treated as admissions of the facts alleged, but a plaintiff may still be required to prove that he or she is entitled to the damages sought. Id.; DIRECTV Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005)." Rainey v. Diamond State Port Corp., 354 F. App'x 722, 724 (3d Cir. 2009). In performing this task, "[t]he district court has considerable latitude in determining the amount of damages. Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). In determining the amount, the district court may conduct a hearing. Fed.R.Civ.P. 55(b)(2). The court is not required to do so, however, 'as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment.' Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997). 'It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.' Pope v. United States, 323 U.S. 1, 12, 65 S.Ct. 16, 89 L.Ed. 3 (1944). IBEW Local Union No. 102 v. Dane Const. Co., LLC, No. 08-907, 2009 WL 872018, at *2 (D.N.J. Mar. 30, 2009)." Malik v. Hannah, 661 F. Supp. 2d 485, 493 (D.N.J. 2009). As part of this process, "the defaulting party is entitled to be heard on the amount of

damages. 5 James Wm. Moore et al., Moore's Federal Practice § 55.32[1][c], [f]." Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc., 270 F.R.D. 161, 164-65 (D. Del. 2010).

UM Techs., Inc. v. Hilts Glob. (Cayman) Ltd., No. 3:17-CV-1998, 2019 WL 948045, at *1–2 (M.D. Pa. Feb. 8, 2019), report and recommendation adopted sub nom. UM Techs., LLC v. Hilts Glob. (Cayman) Ltd., No. 3:17-CV-1998, 2019 WL 934991 (M.D. Pa. Feb. 26, 2019).

In this case, the defaulting defendants—Marx NJ Group, LLC, Joseph Marx, and Angela Marx—have been afforded the opportunity to contest the amount of any damages but have chosen to forego this opportunity. Therefore, we may proceed with a consideration of liquidation of these damages. Moreover, the information and evidence tendered by Berkley clearly shows that a liquidated judgment in its favor is now warranted.

On this score, as a legal matter, under Pennsylvania law the provisions of the surety agreement generally define the scope of the surety's right to indemnification. See U.S. Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d 579 (M.D. Pa. 1998), aff'd, 185 F.3d 864 (3d Cir. 1999). In this case, Berkley's agreement with the defendants expressly provided that:

> 1.01. The Undersigned, jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty of any kind whatsoever, including without limitation, interest

> costs, court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, Case 3:23-cv-00615-JKM-MCC Document 37 Filed 08/27/24 Page 5 of 14 6 33226322v.1 accountants and other professionals or service providers of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse Surety for any payment by it, related to or by reason of: (i) this Agreement, a Contract or Bonds and/or Surety's procuring or enforcement of the same or the prosecution, investigation or defense of any Claim against or by Surety; (ii) any loans, credits, advances or monies guaranteed, lent, advanced or extended by Surety from time to time to or for the account of any Undersigned; (iii) Surety having accepted Collateral as security for the obligations of the Undersigned to Surety or the enforcement of Surety's interest therein; or (iv) the occurrence of an Event of Default and any prosecution, investigation, defense or settlement of the same by Surety; or (v) any action or inaction by Surety or liability incurred or sustained by Surety in reliance upon representations or statements made by Indemnitors or their attorneys and representatives regarding defenses available to an Indemnitor and/or Surety to claims made against such Bonds (all of the foregoing referred to singly as an "Indemnified Claim" or an "Indemnified Expense" and collectively as an "Indemnified Claim or Expense"). The Undersigned shall also pay to the Surety interest on all such payments, from the date thereof, at the maximum legal post-judgment rate permitted by New York law, compounded daily.

(Doc. 37, Ex. A-3).

This contract further stated that, with respect to claims that are made against any of the Bonds, Berkley was vested with broad discretion and the exclusive right to compromise or pay claims. According to the parties' agreement:

> 2.01 Claim Settlement. The Surety shall have the exclusive right in its name and/or the name of any Indemnitor to decide and determine whether any Indemnified Claim, or any claim, off-set or other right of an Indemnitor on a bonded Contract or Contract in which the Surety has an interest, shall or shall not be paid, compromised, settled, resisted,

7

> defended, prosecuted, tried or appealed, and the Surety's decision thereon, absent fraud, shall be final, conclusive and binding upon the Indemnitors. An itemed statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety or the copies of the checks or drafts for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety such amounts with interest from the day of payment.

(Id.) Thus, Berkley's contractual right to pay claims and then seek indemnification seems clear and undisputed.

Berkley's motion also sets forth a detailed spreadsheet of the claims it has paid under the bond which would be subject to indemnification by the defaulting defendants. According to this spreadsheet, which has not been disputed by the defendants in any way, as of July 1, 2024, Berkley has made payments pursuant to its obligations under its Bonds and suffered losses as a result of having issued the Bonds totaling $15,503,494.65, excluding attorneys' and consultants' fees and other fees, costs, and expenses. Berkley has also recovered certain monies from the Obligees on the bonds that Berkley issued, and Berkley has provided the Defendants with a credit for all recoveries. Accordingly, the loss amount of $15,503,494.65 is a fair net loss amount that provides credit for the recoveries that Berkley obtained.

In sum, we find that the defaults of defendants Marx NJ Group, LLC, Joseph Marx, and Angela Marx are undisputed. We further conclude that these defendants have been provided a full and fair opportunity to contest the type and amount of any default judgments proposed by Berkley and have failed to do so. We also find that

the default judgments sought by Berkley in this case are firmly rooted in settled case law, are fully supported by the express language of the parties' agreement and are grounded in uncontested facts. Therefore, we recommend that this motion for entry and liquidation of default judgments be granted.

### III.  Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's motion for default judgment, (Doc. 36), be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of September 2024.

                          *S/ Martin C. Carlson*
                          Martin C. Carlson
                          United States Magistrate Judge